Robert B. RUSSELL, Appellant,

and

Rosie Sampson Collins, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.

Nos. 90–396, 90–416.

United States Court of Veterans Appeals.

Argued June 9, 1992.

Decided Oct. 6, 1992.

As Amended Oct. 22, 1992.

Robert B. Russell, pro se.

Rosie Sampson Collins, pro se.

Michael P. Horan, with whom Ronald L. Nelson, George T. Estry, and Bonnie M. Marinelli were on the brief, for Paralyzed Veterans of America and the Veterans of Foreign Wars as amici curiae.

Gershon M. Ratner, with whom Diane Boyd Rauber and Stephanie Forester were on the brief, for American Legion as amicus curiae.

Ronald L. Smith, with whom Rick Surratt (non-attorney practitioner) was on the brief, for Disabled American Veterans as amicus curiae.

Pamela L. Wood, Deputy Asst. Gen. Counsel, with whom James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Stephen A. Bergquist, and John D. Lindsay, Jr., were on the briefs, for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge:

These cases have been consolidated by the Court to consider whether the Court has jurisdiction to review decisions by the Board of Veterans' Appeals (BVA or Board) on the issue of whether there was "clear and unmistakable error" requiring revision, pursuant to 38 C.F.R. § 3.105(a) (1991), of prior adjudications of either an agency of original jurisdiction (AOJ) or the BVA over which the Court does not otherwise have jurisdiction.

We hold that 38 C.F.R. § 3.105(a), which authorizes the BVA or a Department of Veterans Affairs (VA) Regional Office (RO) to revise previous decisions where there was "clear and unmistakable error," is a valid regulation. We further hold that this Court may review BVA decisions as to "clear and unmistakable error."

## I. GENERAL ANALYSIS

The substantive and procedural aspects of the VA claims adjudication process, for the most part, are defined by specific statutes. This is particularly true regarding claims which have been previously and finally denied and, due to the absence of an appeal, are "final" as a matter of law. If the recipient of a final adverse decision submits new and material evidence to the RO, the Secretary of Veterans Affairs (Secretary) must reopen the claim and review the former disposition of the claim. 38 U.S.C. § 5108 (formerly § 3008). *See also Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991) ("BVA must perform a two-step analysis when a veteran seeks to reopen a claim based upon new and material evidence."); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991) (definition of new and material evidence).

 If the adverse decision resulted from an administrative error by a VA employee, the claimant may seek relief of an equitable nature directly from the Secretary. 38 U.S.C. § 503 (formerly § 210(c)(2)). However, this Court may review only decisions of the Board; we have no jurisdiction to review Secretarial consideration of equitable relief under 38 U.S.C. § 503. *See* 38 U.S.C. § 7252 (formerly § 4052); *Darrow v. Derwinski,* 2 Vet.App. 303, 306 (1992) ("there is neither a statutory nor a regulatory provision for appellate review by the Board [of Veterans' Appeals] of awards of equitable relief by the Secretary ...").

There is no statute which mandates that a prior adjudication must be "reversed or amended" if it is established that there was "clear and unmistakable error." Rather, this requirement derives solely from a regulation, 38 C.F.R. § 3.105(a), promulgated by the Secretary, which governs the adjudication of claims at the RO or AOJ level. That regulation states, in pertinent part:

**38 C.F.R. § 3.105 Revision of decisions**

. . . .

(a) *Error.* Previous determinations on which an action was predicated, including decisions of service connection, degree of

disability, age, marriage, relationship, service, dependency, line of duty, and other issues, will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended....

Because there is no statute specifically mandating the creation of a revision procedure, the first question this Court must address in order to resolve these cases is the validity of 38 C.F.R. § 3.105(a).

■ **A. The Validity of 38 C.F.R. § 3.105(a):** The Secretary has very broad powers to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and [which are] consistent with those laws." 38 U.S.C. § 501(a) (formerly § 210(c)(1)). The absence of a statutory mandate notwithstanding, since at least 1928 the VA and its predecessors have provided for the revision of decisions which were the product of "clear and unmistakable error." *See* Veterans Benefits Regulation 187, § 7155 (1928); Executive Order 6230 (Veterans Regulation No. 2a) (July 28, 1933). The appropriateness of such a provision is manifest. If fundamental error has been made in the adjudication of a claim, benefits have been denied or awarded (§ 3.105(a) permits revision downwards as well as upwards) on a false premise. Simply on the basis, therefore, that the Secretary may appropriately provide for a *nunc pro tunc* revision of decisions to ensure that awards are determined in compliance with law, the promulgation of a revision regulation is well within his discretion.

■ However, the authority and the responsibility of the Secretary to issue regulations with respect to the finality of adjudications of an AOJ is not without limit. Under 38 U.S.C. § 7105(c) (formerly § 4005(c)), the Secretary may promulgate only such regulations as are "not inconsistent with this title" in connection with the finality of AOJ adjudications. We hold that § 3.105(a) is not inconsistent with the statute as to final adjudications of an AOJ. As to the finality of BVA adjudications, 38

C.F.R. § 3.105(a) may superficially seem somewhat at odds with the rules of finality established by 38 U.S.C. §§ 5108 and 7104 (formerly § 4004) which provide that claims finally determined by the Board may not be reopened and reevaluated absent "new and material" evidence. The short answer is that the claim which is reversed or amended due to a "clear and unmistakable error" is not being reopened. It is being revised to conform to the "true" state of the facts or the law that existed at the time of the original adjudication. New or recently developed facts or changes in the law subsequent to the original adjudication may provide grounds for reopening a case or for a de novo review but they do not provide a basis for revising a finally decided case. Accordingly, we hold that 38 C.F.R. § 3.105(a), which requires the amendment or reversal of a previous decision where there was a "clear and unmistakable error," is a lawfully promulgated regulation.

■ **B. The Parameters of 38 C.F.R. § 3.105(a):** In order for there to be a valid claim of "clear and unmistakable error," there must have been an error in the prior adjudication of the claim. Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied. The claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated.

■ By its express terms, 38 C.F.R. § 3.105(a) refers to "determinations on which an action was predicated." Therefore, it necessarily follows that a "clear and unmistakable error" under § 3.105(a) must be the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made. Errors that would not have changed the outcome are harmless; by definition, such errors do not give rise to the need for revising the previous decision. The words "clear and unmistakable error" are self-defining. They are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the

time it was made. A determination that there was a "clear and unmistakable error" must be based on the record and the law that existed at the time of the prior AOJ or BVA decision. Once a determination is made that there was such a "clear and unmistakable error" in a prior decision that would change the outcome, then *that* decision is revised to conform to what the decision should have been.

The Secretary, in his brief, equates the adjectives "clear and unmistakable" to "obvious" as used in 38 U.S.C. § 7103(c) (formerly § 4003(c)). That statute, which authorizes the BVA to correct "an obvious error in the record," perforce means an "obvious" error, the existence of which, as noted above, is undebatable, or, about which reasonable minds cannot differ. *See* Br. at 18. In view of this standard, the "benefit of the doubt" rule of 38 U.S.C. § 5107(b) (formerly § 3007(b)) could never be applicable; an error either undebatably exists or there was no error within the meaning of § 3.105(a).

Section 3.105(a) requires that there be a "clear and unmistakable error" in the previous "determination," that is, in the adjudicative process. For example, a new medical diagnosis that "corrects" an earlier diagnosis ruled on by previous adjudicators is the kind of "error" that could not be considered an error in the original adjudication. *See Henry v. Derwinski*, 2 Vet.App. 88, 90 (1992). Of course, the later diagnosis may furnish evidence sufficient to warrant reopening a claim if the later diagnosis is both "new and material." *Id.*

**C. The Jurisdiction of this Court to Review BVA Decisions under 38 C.F.R. § 3.105(a):** Having determined that the Secretary may properly provide in his regulations for revision of previous adjudications on grounds of "clear and unmistakable error" and having defined the basic ground rules for such a revision, the question remains as to whether this Court has jurisdiction to review a decision of the BVA concerning "clear and unmistakable error" in a previous adjudication that was apparently "final."

■ We start with the undoubted proposition that this Court can and must review any decision of the BVA to which there is a timely Notice of Disagreement (NOD) and Notice of Appeal (NOA). *See* Veterans' Judicial Review Act (VJRA), Pub.L.No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (VJRA applies only to cases in which an NOD was filed on or after November 18, 1988); 38 U.S.C. § 7266(a) (formerly § 4066(a)) (in order to obtain review of a BVA decision, an NOA must be filed with the Court within 120 days of the date of mailing of the notice of the BVA decision). In this regard, a "new" decision of the BVA as to whether there was "clear and unmistakable error" in a previous adjudication is no different from any other BVA decision which may be appealed to this Court.

The Secretary argues that this Court does indeed have jurisdiction to review BVA decisions on "clear and unmistakable error" but only over those decisions that find there *was* "clear and unmistakable error." The Secretary relies on *I.C.C. v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987). However, the holding of the Court in *Locomotive Engineers* was based on the discretionary nature of the provision there:

> *Absent some provision of law requiring a reopening* (which is not asserted to exist [in *Locomotive Engineers*]), the basis for challenge must be that the refusal to reopen was "arbitrary, capricious, [or] an abuse of discretion."

*Locomotive Engineers*, 482 U.S. at 278, 107 S.Ct. at 2365 (emphasis added) (citations omitted). The short answer to Secretary's argument is that his regulation, 38 C.F.R. § 3.105(a), *requires* revision and amendment by the BVA and RO if there is "clear and unmistakable error." Moreover, 38 U.S.C. § 7104(a) (formerly § 4004(a)) requires the BVA to render a decision on the issue if it was adjudicated by the RO. Thus, because the discretionary aspect that was critical in *Locomotive Engineers* simply is not present, and, more importantly, because this Court's statutory mandate to review decisions of the BVA is in no way limited by the nature of the decision made

by the Board, the Secretary's argument is rejected. *See* 38 U.S.C. § 7252 ("The Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board ..."). We hold that, where there was a timely NOD and a timely NOA as to the decision concerning "clear and unmistakable error," the Court has jurisdiction to review the BVA decision.

**D. Scope of Judicial Review of BVA Decisions under 38 C.F.R. § 3.105(a):** Having determined that we have jurisdiction to review BVA decisions on the existence of "clear and unmistakable error" under 38 C.F.R. § 3.105(a), we turn now to the question of the *scope* of such review. As noted above, our jurisdiction is limited to the review of final BVA decisions where an NOD has been filed on or after November 18, 1988, and to which an NOA from the BVA decision is filed with the Court within 120 days from the date of the mailing of notice of the BVA decision. It certainly would be inconsistent with our statutory grant of jurisdiction for us to conduct a "full review," i.e., a determination of factual and legal sufficiency, of previous decisions over which we neither would nor could have plenary jurisdiction because of either the NOD or the NOA requirement.

■ It follows, therefore, and we so hold, that our review of a decision, over which we have jurisdiction, i.e., one that has considered possible "clear and unmistakable error" in previous adjudications over which we do not have jurisdiction is necessarily limited to determining whether the BVA decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." *See* 38 U.S.C. § 7261(a)(3)(A) (formerly § 4061(a)(3)(A)). Implicit in this holding is the requirement that the issue must have been adjudicated below. The necessary jurisdictional "hook" for this Court to act is a decision of the BVA on the specific issue of "clear and unmistakable error." For a claimant to raise such an issue for the first time before this Court and request us to act de novo is tantamount to requesting plenary review over decisions that are not within our jurisdiction. Of course, as is

true in all cases, this Court must also review to determine whether adequate "reasons or bases" were given for the instant BVA decision. *See* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990).

■ **E. Finality of Decisions under 38 C.F.R. § 3.105(a):** One final cautionary note: our imprimatur on the remedy created by the Secretary as to "clear and unmistakable error" does not mean that the same issue may be endlessly reviewed. Contrary to one theory advanced in oral argument, there *is* finality in veterans' benefits jurisprudence. The reopening of a finally denied claim upon the submission of "new and material" evidence and the revision of a previous determination pursuant to 38 C.F.R. § 3.105(a) are permitted only in narrow and carefully limited circumstances. Once there is a final decision on the issue of "clear and unmistakable error" because the AOJ decision was not timely appealed, or because a BVA decision not to revise or amend was not appealed to this Court, or because this Court has rendered a decision on the issue in that particular case, that particular claim of "clear and unmistakable error" may not be raised again. *See* 38 U.S.C. § 7105(b), (c) (NOD must be filed within one year from the date of mailing of the notice of the initial review or determination, otherwise the action or determination becomes final); 38 U.S.C. § 7252; 38 U.S.C. § 7266. It is *res judicata.* 38 U.S.C. § 7104(b) (formerly § 4004(b)). As the Supreme Court specifically noted in *Locomotive Engineers:*

> If the petition that was denied sought reopening on the basis of new evidence or changed circumstances[,] review is available and abuse of discretion is the standard; otherwise, *the agency's refusal to go back over ploughed ground is nonreviewable.*

*Locomotive Engineers,* 482 U.S. at 284, 107 S.Ct. at 2368 (emphasis added).

Today's decision by the Court en banc supersedes any contrary statements or holdings contained in any of the Court's prior opinions. We turn now to the applica-

tion of these principles to the facts of the specific appeals before us.

## II. RUSSELL v. PRINCIPI

This case, alleging in-service hearing loss, presents the question of whether a 1972 RO adjudication committed "clear and unmistakable error" in failing to consider certain evidence. We hold that the BVA erred in not reaching a decision in its 1990 adjudication on the appellant's claim that the RO had committed "clear and unmistakable error" in its 1972 decision rejecting the veteran's claim for service connection for hearing loss. We, therefore, deny the Secretary's motion for summary affirmance, vacate the Board's 1990 decision, and remand the case for adjudication of that issue.

**A. Background:** The veteran, Robert B. Russell, served on active duty in the U.S. Army Air Corps, including combat in World War II, from November 1940 to September 1948; he was a machine gun squad leader and a bombardier. At his 1940 entrance physical examination, his hearing was reported, apparently on a "whisper" test, to be 20/20 in both ears and his ears were found to be "[n]ormal." At a June 1942 physical examination, his hearing was again reported, apparently on a "whisper" test, to be 20/20 in both ears "for low conversational tone" and his ears were again found to be "[n]ormal." An October 9, 1942, "physical exam for flying" reported that the veteran's hearing was 20/20 on a "whisper" test. However, *an audiometer test* conducted at that time (the only such test conducted during service) found that the veteran had a 13% hearing loss in the right ear and a 14.7% hearing loss in the left ear. It was also noted at that time that the veteran had "bilateral otitis media with myringotomy in 1928; normal recovery" and that the "left drum [was] thickened and scarred, non-symptomatic, non-disqualifying." (Otitis media is an "inflammation of the middle ear." DORLAND'S MEDICAL DICTIONARY 1202 (27th ed. 1988).)

Examinations in July, August, and September 1943 reported the veteran's hearing

as 20/20 on a "whisper" test. The September 1943 examination report also noted that the veteran had "otitis media, myringotomy, bilateral, in childhood, NCD [not considered disqualifying]. Moderate scaring [sic] both drums, posteriorly, NCD." On March 12, 1944, the veteran was seen for "otitis media, mild, bilateral." On March 14, 1944, the condition was noted as "[i]mproved." On December 7, 1944, the veteran was seen for "aerotitis, left, severe." On December 8, 1944, a "perforation left [tympanic membrane]" was noted (according to the BVA decision, *Robert B. Russell*, BVA 90–07507 [hereafter *Russell*], at 3 (Apr. 23, 1990)). On December 12, 1944, the perforation was noted as "closed," and on March 18, 1945, the veteran was seen for "blocked ears." On June 9, 1945, it was noted that the veteran had requested to be excused from swimming "because of previous ear trouble." At a July 20, 1948, examination, the veteran's hearing was reported to be 15/15 on a "whispered voice" test and his ears were noted as "[n]ormal." At his September 23, 1948, separation examination, hearing was reported as 15/15 on a "whispered voice" test and his ears were noted as "[n]ormal."

In May 1949, the veteran filed a successful claim with the Veterans' Administration (now the Department of Veterans Affairs) for service-connected disability compensation for an ulcer. At the July 20, 1949, VA examination regarding that claim, his hearing was reported as 20/20 as to "ordinary conversation heard" and his ears were noted as "[n]ormal." On a January 7, 1952, VA "report of medical history" for (according to the BVA) reserve personnel, he noted that he had a history of "ear ... trouble" and "running ears."

A July 11, 1964, statement of Dr. Turner, a private physician, noted that the veteran had:

> noticeable increasing deafness over a period of several years with signs and symptoms of developing discrimination loss. [unreadable] except for definite signs and symptoms of acoustic trauma from air force pilot in the form of noise

but one episode of rupture [sic] drums from bora trauma.

On June 30, 1972, the veteran filed a claim for VA disability compensation for hearing loss, asserting that he had progressive hearing loss "starting with higher tones and now affecting voice hearing range." He also stated that he had ruptured his eardrums in April 1944 during an "emergency parachute jump in enemy occupied territory" and had "reruptured eardrum(s)? on flight at Midland AAF, Texas in 1944 or in 1945." An August 2, 1972, statement from Dr. Call, a private physician, noted that the veteran had "normal hearing through the low to midrange tones, but a high tone neurosensory hearing loss consistent with noise exposure to aircraft."

In a November 28, 1972, decision, the RO denied the claim as to hearing loss but awarded service connection at 0% for the perforated left ear drum. The RO stated that "service records do not indicate defective hearing while on active duty" and "[c]onfirmation of defective hearing while on active duty claimed by veteran [was] not shown by the evidence of record." A February 1973 employment report (first referenced in a 1985 BVA decision) noted that the veteran "has a hearing problem ... [that] affects negatively his intercommunication with [co-workers]."

In 1979, the veteran wrote three letters to the VA asking to have his hearing-loss claim reevaluated. He stated that his hearing had become much worse, that he believed his hearing loss was caused by the high noise level of WWII planes, and that he had flown over 1,200 hours in B–24s. He noted that his military records show he had severe ear infections and injury during service. He also submitted duplicate copies of service records which had been in his claims file at the time of the 1972 RO adjudication. On December 10, 1979, the RO found that the veteran had not submitted new and material evidence to reopen his claim. The RO's notification letter to the veteran stated that service medical records "including discharge exam show no def[ective] hearing" in service.

The veteran then apparently submitted a December 19, 1984, statement from Col. Brewer, stating that he had known the veteran when they were both in service beginning in the summer of 1944 and that the veteran then had a hearing problem. Audiological records from 1980–84 were also submitted, showing, according to the 1985 BVA decision, "air conduction thresholds ranging from 30 to 75 decibels at 2,000 hertz and above in the right ear and from 40 to 75 decibels at 1,500 hertz and above for the left ear in 1980 and thresholds ranging from 35 to 70 decibels at 1,000 hertz and above for the right ear and 25 to 85 decibels at 1,000 hertz and above for the left ear in 1984."

On February 13, 1985, the RO concluded that the evidence submitted was not new and material. The veteran filed a timely NOD appealing that decision. In his April 10, 1985, VA Form 1–9 submitting his appeal to the BVA, the veteran contested the RO's conclusion that he had not submitted new and material evidence, and also asserted that the RO in 1972 and 1979 had committed "clear and unmistakable error" requiring reversal under section 3.105(a). Specifically, with regard to the clear-and-unmistakable-error claim, he argued:

> VA erred by withholding vital information in the 1972 claim which influenced me not to appeal. They erred in the 1979 claim by not preparing a statement of the case after I had filed [an NOD] and by not explaining if I had any further rights to appeal.

The veteran stated that the 1972 RO decision was based in part on an August 2, 1972, physician's statement, which the VA had withheld from the veteran, and which the RO had mischaracterized in its 1972 decision.

The BVA, on June 24, 1985, in denying the claim on appeal, recited most of the evidence, specifically referencing 20/20 conversational voice test results in October 1942, but making no mention of the October 1942 audiometer test. In summarizing the veteran's contentions, the Board stated: "He notes that no audiometric examinations were conducted during service." The

Board also noted that the veteran had experienced ear trouble in service and made reference to a sworn lay statement (Col. Brewer's apparently) that the veteran had hearing problems in service. The Board stated, however: "The Board does not believe it unusual that a hearing loss was associated with the veteran's ear complaints, but believes that such hearing loss was acute and transitory in nature." The Board further concluded:

With regard to the contentions of the veteran that the prior denial contained clear and unmistakable error for failing to provide him with a copy of a private physician's statement on which he would have based his appeal, the Board does not believe that this indicates clear and unmistakable error as contemplated by the applicable law and regulations. . . .

In 1988, the veteran submitted letters he had written to his parents during his service in 1943 and 1944. A March 15, 1943, letter stated: "My ears have been hurting ever since I left Blythe and making funny noises like air rushing through them or something[.] I can't explain the sound." A March 6, 1944, letter stated: "My ears are still ringing from coming down. . . ." A December 9, 1944, letter stated: "He [the doctor] says my left ear was busted, but I can fly in a week or so. Right now I can't hear too much, but it hardly even hurts any." An RO decision dated January 9, 1989, found that these letters did constitute "new" evidence but were not "material," and confirmed the denial.

On May 4, 1989, the veteran wrote the Secretary of Veterans Affairs asking that his claim be reevaluated, stating that subsequent to the 1985 BVA decision, which had determined that hearing loss was not shown in service, he had obtained, through a Privacy Act request, a copy of the 1942 examination report, which referred to an audiometer test showing hearing loss. An RO decision finding no new and material evidence and again confirming the denial was issued on July 3, 1989. On July 31, 1989, the veteran filed an NOD. An October 25, 1989, VA examination, according to the 1990 BVA decision, revealed bilateral hearing loss beginning at 1,500 hertz. *Russell*, at 3.

On his October 16, 1989, VA Form 1–9 appeal to the BVA, the veteran requested that the BVA

address whether or not the VA has committed clear and unmistakable error in *repeatedly ruling* that there is no evidence to show that my bilateral hearing loss was present while I was in the service and whether or not *past rulings* which have denied me disability compensation for service connected bilateral hearing loss are in error and *should be reversed.*

(Emphasis added.) The veteran further stated, with regard to the 1942 audiometer test results:

[B]ecause the VA obviously knew of its existence all along, but did not reveal it to me or make use of it during past decisions on my application for disability compensation . . . such decisions [should] be reversed *on the basis of clear and unmistakable error* by the VA.

(Emphasis added.) On April 23, 1990, the BVA issued a decision again denying the claim. The BVA found:

[The] prior denials of service connection for a hearing loss were consistent with the evidence of record that showed normal hearing on whispered voice testing and at the time of the September 1948 separation exam. Furthermore, new and material evidence has not been presented which would change the basis for that decision. . . . The evidence of record still does not show that the veteran had a chronic hearing loss during service.

*Russell*, at 4. The Board did not discuss the 1942 audiometer test's findings; it merely listed the test under "EVIDENCE" (the very first mention of that test in any BVA or VA adjudicative decision). *Russell*, at 2. No disposition was made of the veteran's claim that "clear and unmistakable error" had been committed in prior VA adjudications. A timely appeal to the Court followed under 38 U.S.C. § 7251 (formerly § 4051) and § 7266.

**B. Analysis:** The question before the Court in this case is whether the BVA in

1990 erred in not determining whether the RO had committed "clear and unmistakable error" in 1972. The appellant specifically contended on appeal to the BVA in 1989 that "the VA has committed clear and unmistakable error in repeatedly ruling that there was no evidence to show that my bilateral hearing loss was present while I was in the service." The appellant also specifically raised in his appeal to this Court "[w]hether or not the VA has committed clear and unmistakable error in any aspect of appellant's claim for disability benefits." Statement of Issues Presented for Review, Br. at 1. We find frivolous the Secretary's assertions that this issue was not so raised.

■ It is first necessary to determine the precise nature of the clear-and-unmistakable-error claim made in 1989. The Board in 1985 had rejected a clear-and-unmistakable-error claim, and under our holding today, based on the Supreme Court's decision in *Locomotive Engineers,* an appellant is not entitled to raise again a "particular claim" of "clear and unmistakable error" once there has been a final decision denying that claim. In this case, the clear-and-unmistakable-error claim raised in 1985 related to the veteran's contention that the VA had withheld "vital information in the 1972 claim" and that, after he had filed an NOD, the RO in 1979 had not prepared a Statement of the Case to explain if he "had any further rights to appeal." It is apparent that the BVA in 1985 did not consider whether the RO in 1972 had committed "clear and unmistakable error" in failing to consider the 1942 audiometer report, as evidenced by the BVA stating in 1985: "He notes that no audiometric examinations were conducted during service." Further, in a May 4, 1989, letter to the VA, the veteran had stated that he had learned about the existence of the 1942 audiometer report only after the 1985 Board decision. In contrast, in his 1989 claim the veteran asserted that it was "clear and unmistakable error" for VA to fail to "reveal [the 1942 audiometer report] to me or make use of it during past decisions on my application for disability compensation."

Hence, we conclude that the clear-and-unmistakable-error claim submitted to the BVA in 1989 was not the claim that the BVA had rejected in 1985. That being so, the BVA was obligated to determine in its 1990 decision whether or not the RO had committed "clear and unmistakable error" in its 1972 decision by denying the appellant's claim without considering the audiometer report. *See Oppenheimer v. Derwinski,* 1 Vet.App. 370, 372 (1991). Based on the articulation of principles set forth in part II, above, we conclude that the Board committed prejudicial error in its 1990 decision here on appeal by failing to decide the clear-and-unmistakable-error issue as to the 1972 RO decision. *Id.*

■ The "clear and unmistakable error" appellant asserted here was that the audiometer report was erroneously not considered in 1972 or that the RO considered the wrong facts in 1972 when it concluded that there was no evidence of defective hearing in service. The "clear and unmistakable error" alleged is different from the issue of service connection determined by the RO in 1972 which found expressly that "service records do not indicate defective hearing while on active duty." That statement was undebatably incorrect when made, because the 1942 audiometer report was certainly then in the record and was certainly indicative of defective hearing while in service. Yet, the RO denied the very existence of the evidence. Moreover, a VA regulation in effect when the RO made its 1972 decision provided: "Determinations as to service connection will be based on *review* of the *entire* evidence of record." 38 C.F.R. § 3.303(a) (1964) (emphasis added). Thus, the RO in 1972 either violated the regulation by not considering the audiometer report then in the record or made an erroneous factfinding, or both. In any event, the RO undebatably committed error both in failing to follow an applicable regulation (38 C.F.R. § 3.303(a)) and in making a misstatement of fact about the evidence—in effect denying the existence of evidence that did indeed exist and was a part of the claims file.

Our determination that, as a matter of law, the RO in 1972 committed error does not end the matter. It must next be determined whether the error was a "clear and unmistakable error" under 38 C.F.R. § 3.105(a); i.e., whether, on the full record before the RO in 1972, the evidence establishes manifestly that the correction of the error would have changed the outcome—that is, that service connection would have resulted had the audiometer report been considered. Other than the in-service whisper hearing tests, the evidence before the RO in 1972 was: (1) the October 1942 audiometer test showing reduced hearing in both ears; (2) the July 1964 statement from the private physician, Dr. Turner, noting "definite signs and symptoms of· acoustic trauma from an air force pilot in the form of noise" and "noticeable increasing deafness over a period of several years with signs and symptoms of developing discrimination loss"; and (3) the August 1972 statement from Dr. Call, another private physician, that the veteran had "normal hearing through the low to mid range tones, but a high tone neurosensory hearing loss consistent with noise exposure to aircraft."

We view deciding this issue as a task for the Board in the first instance. *See Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) ("not appropriate for [court of review] to make a de novo finding [of material fact], based on the evidence"). Hence, we will remand this question to the Board to determine whether the error made by the RO in 1972 was a "clear and unmistakable error" under 38 C.F.R. § 3.105(a) which requires revision of the 1972 denial of service connection.

**C. New and Material Evidence:** Appellant also argued that the BVA erred when it determined that he had failed to submit sufficient new and material evidence to warrant reopening of his claim under 38 U.S.C. § 5108. We do not address the new-and-material-evidence question because a determination that "clear and unmistakable error" was committed in the 1972 RO decision and that, therefore, service connection for hearing loss should be awarded, would result in a far earlier effective date for such an award than would be the case if

the claim were reopened and awarded based on new and material evidence submitted in connection with the current adjudication. We will, however, retain jurisdiction to facilitate further review should it become necessary.

**D. Conclusion:** In light of the foregoing, the Court will remand the case for the Board to adjudicate appellant's claim of "clear and unmistakable error" consistent with this opinion. On remand, the appellant will be free to present additional argument, including his contention that the 1942 audiometer report strips the "whisper" tests taken subsequent to that audiogram of any evidentiary value. The Secretary shall file with the Clerk of the Court (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after the filing of any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court. If further review is sought, the appeal will be assigned to a panel in accordance with the Internal Operating Procedures of the Court and the parties shall ensure that the record is supplemented so as to contain all documents relevant to disposition of the appeal.

Accordingly, the April 23, 1990, BVA decision in *Russell*, No. 90–936, is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

## III. COLLINS v. PRINCIPI

■ Appellant's husband served on active duty during World War II and died in January of 1968. In February of 1968, appellant submitted a claim for veterans' death benefits, stating that she and the veteran married in 1948, that the marriage ended with his death, and that she had five children by the marriage. She also reported that she and the veteran had separated eight years previously due to the veteran's drinking and physical abuse. She explained that she had not provided the birth certificate of her sixth child, Patricia, because "she just have the Collins' name." Subsequently, the RO asked appellant to

detail the facts and circumstances surrounding her separation from the veteran. *See* 38 U.S.C. § 101(3) (surviving spouse must have lived continuously with the veteran "except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse ..."). In response, appellant submitted a statement discussing her marriage to the veteran and their eventual separation. She also wrote: "I've not live with no man, since or before, we married."

On August 15, 1968, appellant was awarded death pension benefits as custodian of the veteran's children, and on February 12, 1969, she was awarded death pension as the widow of a veteran with additional allowances for the children. In May 1978, in accordance with a request from the RO, appellant submitted Patricia's birth certificate; appellant and the veteran were listed as Patricia's parents. In an accompanying letter appellant indicated that Patricia's biological father was Patrick Johnson, not the veteran. The RO responded that Patricia's birth certificate was considered proof that the separation was appellant's fault, and, therefore, raised the question of her continued entitlement to death pension benefits. *See* 38 U.S.C. § 101(3). Appellant was asked to submit evidence that the veteran condoned her actions. Appellant's reply detailed the relationship she had with her husband before his death.

In a September 26, 1978, administrative decision, the RO held that, due to an "administrative error," appellant should not have been paid benefits as the widow of the veteran. Consequently, the RO terminated appellant's award of death pension benefits effective July 1, 1978. Appellant submitted an NOD and in response the RO sent her a letter explaining in detail why her benefits were discontinued. She was informed that, if she still wished to disagree with the termination of her benefits, she should complete and return an enclosed form. Appellant did not respond.

On June 28, 1986, appellant contacted the RO and requested that her VA death pension benefits be resumed effective from the time they were discontinued; she was subsequently informed by the RO that her claim could be reopened only if she submitted "new and material" evidence indicating she was not at fault in the separation between herself and the veteran. *See* 38 U.S.C. § 5108. Appellant wrote to her Representative in Congress, the Honorable Lindy Boggs, who subsequently wrote to the VA on appellant's behalf in November of 1988.

In January 1989, appellant again attempted to reopen her claim. The RO again refused to reopen the claim, finding that she had not submitted "new and material" evidence. She submitted an NOD on February 13, 1989. On March 15, 1989, the RO specifically asked appellant whether she and Patrick Johnson ever lived together as husband and wife. She responded that she and Patricia's father, Patrick Johnson, had never lived together. This statement was deemed "new and material" evidence by the RO, and on March 24, 1989, she was awarded VA death pension benefits effective January 1989, with the payment date of February 1, 1989.

Subsequently, appellant filed an NOD asking for an effective date of 1978 and not 1989. The RO denied an earlier effective date explaining that her benefits had been terminated based on evidence that a child was born during her separation from the veteran, and that, since appellant did not reopen her claim by submitting "new and material" evidence until January 9, 1989, the earliest possible effective date of her benefits was January 9, 1989. She appealed to the BVA and was sent a Statement of the Case. Without reference to Mrs. Collins' 1978 statement (which was consistent with her 1968 statement) that she had never lived with anyone other than the veteran, a statement repeated without change in 1989, the BVA reached the bare conclusion that the November 1978 RO decision did not involve "clear and unmistakable error." No reasons or bases were given. It viewed the November 1988 letter from Representative Boggs as an informal claim. *See* 38 C.F.R. § 3.155 (1991) (a communication from a member of Congress indicating an intent to apply for VA benefits on behalf of a veteran may be regarded as an informal claim). The BVA deemed the effective

date of the award to be December 1, 1988, rather than February 1, 1989. Appellant appealed to this Court.

When appellant was granted death benefits in February 1969, the record contained three key statements by appellant: (1) that the veteran was not Patricia's biological father; (2) that appellant never lived with anyone other than the veteran; and (3) that she and the veteran separated because of the veteran's physical abuse and drinking problem. These same three statements were still in the record in 1978, when the RO concluded, with absolutely no basis in the record, that Patricia's birth, six years after the initial separation, *proved* the separation was appellant's fault.

It is obvious that, in these circumstances where there was no change in the facts in evidence between 1968, 1978, and 1989, there may well have been "clear and unmistakable error" in the 1978 reduction. Appellant raised the issue below in December 1978 and June 1986. It is difficult to see how the RO, in 1978, could have found "administrative error" and then returned to the same result as it had reached in 1968 where there had been no change in the essential facts. This squarely raises the issue of whether there was "clear and unmistakable error" under 38 C.F.R. § 3.105(a) in misapplying the regulation on reduction of awards and the consequent question of whether the outcome would have manifestly changed had the law been applied correctly. Although the BVA did purport to determine that there was no "clear and unmistakable error," its resolution of this issue was not accompanied by the explanatory statement of the reasons or bases required by 38 U.S.C. § 7104(d)(1). A remand will provide the BVA with the opportunity to correct this defect, readjudicate the issue and, in so doing, apply the principles of law established in this decision of the Court. Accordingly, we VACATE the March 26, 1990, decision of the BVA in *Collins*, No. 90–416, and REMAND the case to the BVA for further proceedings consistent with this opinion.