NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ARNOLD J. FREEDMAN,**
*Claimant-Appellant,*

v.

**Eric K. Shinseki,**
**SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7098

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-4117, Judge Robert N. Davis.

---

Decided: March 11, 2013

---

ARNOLD J. FREEDMAN, of Woodbury, New York, pro se.

CORINNE A. NIOSI, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and SCOTT D. AUSTIN, Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and JONATHAN E. TAYLOR, Attorney,

United States Department of Veterans Affairs, of Washington, DC.

————————

Before MOORE, REYNA, and WALLACH, *Circuit Judges*.

PER CURIAM.

Claimant-Appellant Arnold Freedman appeals the decision of the United States Court of Appeals for the Veterans Claims ("Veterans Court") affirming a November 24, 2010 decision of the Board of Veterans' Appeals ("Board"). *Freedman v. Shinseki*, No. 10–4117, 2012 WL 268266 (Vet. App. Jan. 31, 2012). The Veterans Court affirmed the Board's decision denying an earlier effective date on the basis of clear and unmistakable error ("CUE"). We dismiss for lack of jurisdiction.

## BACKGROUND

Mr. Freedman served on active duty in the Army from March 5, 1953 to December 12, 1953. The record indicates that Mr. Freedman had a difficult time adjusting to military service. Mr. Freedman's difficulties remained consistent, which the record shows led to his perception of the Army as unfair and discriminatory.[1] Mr. Freedman eventually became more hostile and paranoid, and in September 1953 about six months into his military service, it was recommended he be admitted for observation and be evaluated for neuropsychiatric problems.

---

[1] For example, there was an incident in which Mr. Freedman was incorrectly charged with being away without leave when he overstayed a three-day pass for the Jewish holidays. Although the court martial verdict was overturned and apologies were issued when it turned out that he had taken ill while at home, that experience and other further difficulties exacerbated Mr. Freedman's perception of the Army.

During his admission, it was discovered Mr. Freedman had a prior history of psychiatric problems. In particular, he reported a prior history of problems with authority figures at work, as well as narcissistic and grandiose thought patterns. He received a diagnosis of schizophrenic reaction, paranoid type, chronic, moderate, manifested by looseness of associations, paranoid ideation, delusions of persecution, ideas of reference, and grandiose productions. The examiner further opined that there was no evidence of impairment of his social or industrial capacity beyond that of his pre-service level adjustment. A physical evaluation board also noted this condition exited prior to service and was not in the line of duty. As a result, Mr. Freedman was discharged in December 1953—less than a year from his entrance into service.

The day after separation from service, Mr. Freedman filed a claim for disability benefits for a "nervous condition." Pursuant to that claim he received an initial VA medical examination, which stated in relevant part:

> The Army diagnosed schizophrenia, in complete remission. They noted a "looseness of association" and grandiose and paranoid trends. I do not think this diagnosis is correct. The whole story, as outlined in the Army records and as not given by him in retrospect, can be explained as a manifestation of an immature personality. In my opinion he has paranoid trends but is not psychotic. To be sure, his ability to withstand stress is not good, and it is possible he may some day break down, but for rating purposes at present I would diagnose him as . . . [p]assive-aggressive personality.

Appendix ("App.") at 46–47. Relying on this analysis, and its own medical analysis, the rating board at the Regional Office ("RO") denied the claim. Mr. Freedman did not appeal this decision ("1954 Rating Decision").

On December 30, 2005, the RO received a claim from Mr. Freedman requesting service connection for schizophrenia. Finding new and material evidence had been submitted, the Board reopened Mr. Freedman's prior claim for service connection in March 2008, and granted service connection for the anxiety disorder in October 2008. On remand, the RO effectuated the Board's decision granting service connection for anxiety disorder, assigning an initial 30 percent rating from December 30, 2005. December 30, 2005 was assigned as the effective date pursuant to 38 U.S.C. § 5110.[2] Mr. Freedman disagreed with the assignment of the effective date, arguing that the effective date should be the day after his separation from service, and he appealed the RO's effective date determination to the Board. At a hearing before the Board in September 2010, Mr. Freedman presented a CUE theory for the first time arguing that the 1954 Rating Decision was in error, which if found to be true, would allow his effective date to relate back to the date of that decision. 38 C.F.R. § 3.105(a) ("For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of clear and unmistakable error has the same

---

[2]    38 U.S.C. § 5110(i) states, in relevant part: Whenever any disallowed claim is reopened and thereafter allowed on the basis of new and material evidence . . . the effective date of commencement of the benefits so awarded shall be the date on which an application was filed for correction of the military record or for the change, modification, or correction of a discharge or dismissal, as the case may be, or the date such disallowed claim was filed, whichever date is the later, but in no event shall such award of benefits be retroactive for more than one year from the date of reopening of such disallowed claim.

effect as if the corrected decision had been made on the date of the reversed decision.").

In a November 24, 2010 decision, the Board found that Mr. Freedman's request of an effective date as the day after his separation from service relates back to the 1954 Rating Decision, which he had not appealed and was therefore final. As a result, the Board noted that decision could only be revised upon a collateral attack showing that the RO committed CUE. The Board concluded that Mr. Freedman had not established CUE, and the Veterans Court affirmed. Mr. Freedman filed a timely appeal to this court.

## DISCUSSION

This court has jurisdiction to review decisions by the Veterans Court with respect to a "challenge to the validity of any statute or regulation or any interpretation thereof." 38 U.S.C. § 7292(c). We lack jurisdiction to review factual determinations or the application of law to fact, except to the extent that a veteran's appeal presents a constitutional issue. *Id.* § 7292(d)(2).

In order for his effective date to relate back to 1954, Mr. Freedman requests revision of the unappealed 1954 Rating Decision on the basis of CUE, which is a collateral attack of a final decision. *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696–98 (Fed. Cir. 2000). With respect to the CUE claim, 38 U.S.C. § 5109A authorizes the Secretary to revise an earlier, final decision if the decision is the product of a clear and unmistakable error. Therefore, in order to revise a final decision, it must be the case that:

> (1) Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied,

> (2) The error must be "undebatable" and the sort "which, had it not been made, would have mani-

festly changed the outcome at the time it was made," and

(3) A determination that there was CUE must be based on the record and the law that existed at the time of the prior adjudication in question.

*Willsey v. Peake*, 535 F.3d 1368, 1371 (Fed. Cir. 2008) (citing *Russell v. Principi*, 3 Vet. App. 310 (1992)); s*ee Cook v. Principi*, 318 F.3d 1334, 1346 (Fed. Cir. 2002) (en banc).

The controlling regulation that existed at the time of the 1954 Rating Decision included the following provision:

Every person employed in active service shall be taken to have been in sound condition when examined, accepted and enrolled for service except as to defects, infirmities or disorders noted at the time of examination, acceptance and enrollment or where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment and was not aggravated by such service.

38 C.F.R. § 3.63(b) (1954). The regulation also defined "clear and unmistakable" as "obvious or manifest." 38 C.F.R. § 3.63(d). In view of this provision, the Veterans Court began its review of the Board's decision with a reading of the 1954 Rating Decision. The court took note of the decision's conclusion: "No matter what the NP [neuropsychiatric] disability may eventually be in this case, it is *clear and convincing* that it existed prior to induction and that his Army experiences did not result in permanent increase in the basic level thereof." *Freedman*, 2012 WL 268266 at *2 (alteration in the original, emphasis added, and internal citation omitted).

Accordingly, the Veterans Court rejected Mr. Freedman's contention that the RO's application of an incorrect legal standard was outcome determinative. The Veteran's Court, while recognizing the RO's error in the use of the "clear and convincing" standard as opposed to the "clear and unmistakable" standard, nevertheless, found that in a CUE matter, the appellant has the additional burden of showing that absent the error the outcome would have been "manifestly different." *Id.* at *3.

The Veterans Court determined that Mr. Freedman cannot show that the outcome would have been "manifestly different" for at least two reasons. First, the Veterans Court noted that the RO accepted the initial VA examination's diagnosis of a passive-aggressive personality disorder, which was a noncompensable disability under the regulation. *See* 38 C.F.R. § 3.63(f) (1954). Therefore, according to the court, the existence of this noncompensable condition would not have affected the decision of the RO in denying service connection.

In addition, the Veterans Court determined that Mr. Freedman failed to contend how the RO committed clear and unmistakable error in light of the evidence documenting his problems as existing prior to service. Hence, the Veterans Court held that it was "unable to say that the Board erred in finding that the 1954 [R]ating [D]ecision did not involve undebatable error that, had it not been made, would have manifestly changed the outcome of that decision." *Freedman*, 2012 WL 268266 at *4 (internal citations omitted).

On appeal to this court, Mr. Freedman contends that "[e]verything happened in the Army, not prior to or aggravated in service . . . All evidence prior to entering service states no medical or mental condition." Appellant's Informal Br., Resp. No. 2. Also, in response to the third question in the Appellant's Informal Brief, Mr. Freedman suggests that the 1954 Rating Decision failed to apply 38

C.F.R. § 3.63(b). *Id.*, Resp. No. 3. Generally, Mr. Freedman makes similar arguments previously presented to the Board and the Veterans Court.

As to his first contention, "[w]hether evidence regarding the veteran's pre-existing condition rises to the level of 'clear and unmistakable evidence' is simply the application of the facts to the legal standard" an issue that the Federal Circuit is without jurisdiction to consider. *Waltzer v. Nicholson*, 447 F.3d 1378, 1380 (Fed. Cir. 2006) (quoting *Belcher v. West*, 214 F.3d 1335, 1338 (Fed. Cir. 2000)). In other words, we do not have jurisdiction to consider the Board's and the Veterans Court's review of the RO's 1954 Rating Decision in determining whether the evidence in the record was sufficient to constitute clear and unmistakable evidence. With regard to Mr. Freedman's second contention, this court also lacks jurisdiction to consider this argument. Indeed, Mr. Freedman's reference to 38 C.F.R. § 3.63(b) does not raise any questions involving an interpretation of the regulation itself, but rather whether, assuming error, the error was outcome determinative. Based on facts in the record, the Veterans Court found that misapplication of the "clear and unmistakable" language as recited in 38 C.F.R. § 3.63(b) did not affect the outcome. We lack jurisdiction over such factual determinations.

All other arguments Mr. Freedman presents are without merit. In particular, Mr. Freedman does not provide any explanation as to how his constitutional rights may have been implicated in the Veterans Court's affirmance of the November 24, 2010 Board Decision. Accordingly, they are not before this court for review. *See* 38 U.S.C. 7292(a). Thus, we dismiss this case for lack of jurisdiction.

## DISMISSED.

No costs.