﻿Citation Nr: 18104734
Decision Date: 05/23/18 Archive Date: 05/22/18

DOCKET NO. 14-31 762
DATE: May 23, 2018
ORDER
As there was clear and unmistakable error (CUE) in the March 2009 rating decision that terminated the Veteran’s award of a total disability evaluation based on individual unemployability (TDIU) effective October 24, 2001, the appeal to revise that decision is granted.
FINDING OF FACT
The statutory and regulatory provisions then in effect were not properly applied by the Agency of Original Jurisdiction, and the failure to correctly apply the law and regulations to the facts manifestly changed the outcome of the decision.
CONCLUSION OF LAW
The March 2009 rating decision which terminated entitlement to TDIU contained CUE. 38 U.S.C. § 7105; 38 C.F.R. § 3.105. 
REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran served on active duty from December 1980 to July 1992. This matter is on appeal from a March 2013 rating decision.
Whether there was CUE in the March 2009 rating decision
The Veteran claims that there was CUE in the March 2009 rating decision that terminated the Veteran’s award of TDIU based on fraud effective October 24, 2001. 
If the evidence establishes CUE in a prior RO rating decision, the decision will be reversed or amended. 38 U.S.C. § 5109A; 38 C.F.R. §§ 3.104(a), 3.105(a). In determining whether a prior determination involves CUE, the United States Court of Appeals for Veterans Claims (Court) has established a three-prong test. The three prongs are: (1) either the correct facts, as they were known at the time, were not before the adjudicator (i.e., there must be more than simple disagreement on how the facts were weighed or evaluated), or the statutory/regulatory provisions extant at that time were not correctly applied; (2) the error must be “undebatable” and of the sort which, if it had not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the adjudication in question. Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (citing Russell v. Principi, 3 Vet. App. 310, 313-14 (1992) (en banc)).
By way of history, a July 2002 rating decision granted entitlement to TDIU effective October 24, 2001. 
In a January 2009 rating decision, the RO proposed to terminate entitlement to TDIU effective October 24, 2001 based on fraud, following an OIG investigation. It was indicated that TDIU was awarded based principally on the Veteran’s subjective reports of functional limitations, and that the Veteran admitted to fraud for the purposes of receiving increased VA benefits. The Veteran was notified of the proposed rating decision in January 2009, and was advised that he could request a hearing within 30 days and could submit additional evidence within 60 days. In a March 2009 rating decision, the RO terminated entitlement to a TDIU effective October 24, 2001. 
The regulations at the time of the March 2009 rating decision are the same as those in effect today. Total disability ratings for compensation may be assigned where the schedular rating is less than total when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disability or disabilities, provided that, if there is only one such disability, the disability shall be ratable at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a) (2009). In addition, a TDIU rating may be awarded if a Veteran fails to meet the applicable percentage standards enunciated in 38 C.F.R. § 4.16(a), but is still unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b).
As a prerequisite for termination of a total disability rating, VA regulations direct that actual employability must be established by clear and convincing evidence. Moreover, if a Veteran begins to engage in a substantially gainful occupation during the period beginning after January 1, 1985, his rating may not be reduced solely on the basis of having secured and followed that substantially gainful occupation unless the Veteran maintains that occupation for a period of 12 consecutive months. 38 C.F.R. § 3.343(c). 
Also, according to the implementing regulation, fraud is any act committed when a person knowingly makes or causes to be made or conspires, combines, aids, or assists in, agrees to, arranges for, or in any way procures the making or presentation of a false or fraudulent affidavit, declaration, certificate, statement, voucher, or paper, concerning any claim for benefits under any of the laws administered by VA (except laws relating to insurance benefits). 38 C.F.R. § 3.901. VA has also defined “fraud” as “an intentional misrepresentation of fact, or the intentional failure to disclose pertinent facts, for the purpose of obtaining or retaining... eligibility for [VA] benefits, with knowledge that the misrepresentation or failure to disclose may result in the erroneous award or retention of such benefits.” 38 U.S.C. § 501; 38 C.F.R. § 3.1(aa)(2).
The Veteran argues that VA failed to consider and correctly apply the provisions of 38 C.F.R. § 3.343(c), including the notice requirements of 38 C.F.R. § 3.105(e) in the March 2009 rating decision, and that there was no basis to have voided the Veteran’s entitlement to TDIU based on fraud. He has also argued that VA failed to consider and correctly apply the provisions of 38 C.F.R. §§ 3.344(a) and (c), arguing that the evidence of record at the time of the termination did not indicate there was material improvement in the Veteran’s conditions making it reasonably certain that any improvement would have been maintained under the ordinary conditions of life. 
Under 38 C.F.R. § 3.105(e), where the reduction in evaluation of a service-connected disability or employability status is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, the Veteran is to be notified of the action taken and furnished detailed reasons therefor, and given 60 days for the presentation of additional evidence prior to the reduction. Under 38 C.F.R. § 3.343(c), TDIU can be discontinued by following the provisions of 38 C.F.R. § 3.105(e) “but caution must be exercised in such a determination that actual employability is established by clear and convincing evidence.” 38 C.F.R. § 3.343(c). 
38 C.F.R. § 3.344 states that ratings for disabilities that have continued for long periods at the same level (5 years or more) may be reduced only if the examination on which the reduction is based is at least as full and complete as that used to establish the higher evaluation; and if there is any doubt the rating should be continued. 
The evidence of record includes the Veteran’s claim for TDIU in February 2002, where he stated that his foot, back, and carpal tunnel conditions prevented him from securing or following any substantially gainful occupation. He indicated he last worked in October 2001 as an inventory clerk. The Veteran’s employer confirmed that he last worked in October 2001, but did not indicate the reason for termination.
In a January 2002 VA treatment record, it was noted that the Veteran was fired from his job because he could not lift. Since then he had been feeling better, although he still had bad days with pain in the neck and pain in both arms. 
An April 2002 VA examiner noted subjective complaints of increasing low back pain, increasing pain and limitation of movement due to bunions and hammertoes, and increasing pain, paresthesias and decreased grip strength from carpal tunnel syndrome. The examiner also indicated that a physical examination revealed limited range of motion, positive straight leg raising (SLR) test and flip sign, hammertoes and bunions in the feet with limited ranges of motion and mild degenerative changes, and positive Tinel’s and Phalen’s sign in the wrists. 
A July 2002 rating decision granted entitlement to TDIU effective October 24, 2001. The RO found that the current record demonstrated that the Veteran last worked in October 2001 as an inventory clerk and that his service-connected disabilities effectively precluded him from obtaining or maintaining any form of substantially gainful employment commensurate with his education and previous work history. On October 24, 2001, the Veteran was service-connected for a lumbar spine disability, asthma, status post bunionectomy of the right and left great toes, bilateral carpal tunnel syndrome, and a laceration to the left eyebrow. Service connection for a cervical spine disability was awarded effective November 5, 2001, shortly after the effective date for TDIU.
In April 2005, a VA field examiner received a message from a neighbor of the Veteran who indicated that the Veteran did odd jobs for extra money, and lifted bales of hay and large sacks of grain and carried them to the horses. 
An April 2005 VA treatment record from the Veteran’s orthopedist noted that the Veteran had been treated for low back pain with radiation to the right leg for several years. He reported dizziness and episodes of blurring vision. He would lose his balance and would need to hold onto something for stability. Range of motion of the lumbar spine was limited, and the Veteran had a slow gait with mild limp. The VA orthopedist stated that it was his opinion that the Veteran was completely disabled with regard to employment. 
On an August 2006 Employment Questionnaire (VA 21-4140), the Veteran indicated that he had not been working for the past twelve months.
During an October 2006 VA examination, the Veteran indicated that he spent his day in and out of the house and watching TV. He indicated that he lived alone and did his own house chores and managed his own activities of daily living without assistance. He continued to drive a vehicle, and travel for health care and shopping. He indicated he could walk around Walmart for 15 to 20 minutes before feeling fatigue secondary to his feet and back, standing was limited to 10 to 15 minutes, and sitting for 30 minutes before requiring a change in position. The Veteran complained of itching and swelling in the feet, as well as foot pain. The Veteran indicated that standing and walking produced pain, and that there was no effect on occupation as he was unemployable. The Veteran also complained of cervical pain and low back pain with bilateral radicular pain to both legs, along with numbness and tingling in the hands. There was slight limitation of motion in the cervical and lumbar spine. The examiner stated that the Veteran was very capable of sedentary or partial sedentary work. In December 2006, the VA examiner reviewed a surveillance videotape from the OIG, which showed the Veteran bending forward, picking up a broom, carrying a wooden ladder and metal sheets. He was also able to shovel, squat and kneel. The Veteran could also walk on uneven surfaces with no problem. Continual walking, standing, sweeping, kneeling, squatting, bending, and lifting were observed for greater than an hour. The examiner stated that it was clear and unmistakable evidence that the Veteran was capable of physical work, at a minimum partial sedentary work. The video showed sustained effort for up to 6 hours, and the Veteran was not resting or sitting down. 
In a July 2007 addendum, following a review of another OIG videotape, the examiner found that the Veteran was capable of physical work activity, at a minimum partial sedentary work. The examiner also found that the Veteran had not undergone any improvement in his physical condition since 2001 or 2002, and considering the passage of time and likely progression of his multiple medical problems, his abilities in 2001 and 2002 were at least equal to, if not greater than, the abilities shown on the videotapes. 
The Veteran provided a written statement in a June 2007 statement to the OIG, admitting that he overstated his disabilities beginning in 2002. He indicated that he could not do anywhere near as much as he used to be able to do, but that he had overstated his disabilities because he could not find gainful employment even though he tried. He also indicated that he could do his own yard work, carrying feed bags to the horses and water to his birds in two-gallon cans. He indicated he was able to walk more than 100 feet and over 15 to 20 minutes; could walk 150 feet back and forth for several hours; hold things and grip them; use power tools; and sit for prolonged periods of time. He indicated he had problems concentrating and that he had put in for TDIU and SSDI even though he did not have to because his representative at the time told him to because he could not find a job. 
In determining whether there was CUE, the first question to be addressed in this case is whether the correct facts, as they were known at the time of the March 2009 rating decision, were not before the adjudicator, or the statutory/regulatory provisions extant at that time were not correctly applied. 
The Board finds that the RO complied with the procedures set forth under 38 C.F.R. § 3.105(e) by preparing a rating decision proposing the discontinuance in January 2009, which set forth the rationale for the proposed discontinuance. The Veteran was notified of the proposed action in January 2009, given the opportunity to request a hearing and afforded 60 days to present additional evidence. The Veteran did not request a hearing. As such, the RO’s termination of a TDIU was procedurally in accordance with the notice provisions under 38 C.F.R. § 3.105. 
The March 2009 rating decision terminating entitlement to a TDIU was based on a finding that the Veteran admitted to the commission of fraud in obtaining increased VA benefits, and that TDIU was awarded based principally on his subjective reports of functional limitations. The effective date of the termination was October 24, 2001, the effective date of the award of TDIU, pursuant to 38 C.F.R. § 3.500(k). 
As noted above, fraud is defined as an intentional misrepresentation of fact, or the intentional failure to disclose pertinent facts, for the purpose of obtaining or retaining eligibility for VA benefits, with knowledge that the misrepresentation or failure to disclose may result in the erroneous award or retention of such benefits. 38 U.S.C. § 501; 38 C.F.R. § 3.1. In this case, in the June 2007 statement to the OIG, the Veteran admitted to misrepresenting the severity of his disabilities in order to obtain TDIU benefits, because he could not find a job at that time. 
However, the RO’s justification for the termination of TDIU based on fraud was not that TDIU was awarded in July 2002 based on the Veteran’s subjective reports of functional limitations, but that it was based “principally” on the Veteran’s subjective reports of functional limitations. The finding indicates that TDIU was granted on other bases aside from the Veteran’s subjective reports. In addition. the statement is not accurate as the July 2002 rating decision does not contain a finding that TDIU was warranted principally due to the Veteran’s subjective reports. 
The RO also did not make a determination as to whether actual employability existed by clear and convincing evidence, as required for a termination of a total disability rating under 38 C.F.R. § 3.343(c). A finding of actual employability under 38 C.F.R. § 3.343(c)(1) must encompass a finding that the Veteran is no longer unemployable-that is, is no longer “unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities” under 38 C.F.R. § 4.16(a). This is significant because at the time of the March 2009 rating decision, while there was evidence that the Veteran could possibly secure gainful employment, the evidence did not show clear and convincing evidence of actual employability. There is no evidence that the Veteran was employed from 2001 to 2009. In addition to the October 2006 VA examiner’s opinion that the Veteran was capable of physical work activity, at a minimum partial sedentary work, the record also contained evidence of limited range of motion in the spine, positive SLR and Flip sign, hammertoes and bunions in the feet with limited ranges of motion and mild degenerative changes, and positive Tinel’s and Phalen’s sign in the wrists; and an April 2005 opinion that the Veteran’s service-connected lumbar spine made him completely disabled with regard to employment. Also, while the videotapes from the OIG showed the Veteran with no apparent limitation of function, there is no evidence to show that the Veteran could maintain a physical or sedentary occupation for a period of 12 consecutive months. 
Therefore, the Board finds that the RO failed to properly apply the provisions of 38 C.F.R. § 3.343(c) in terminating the Veteran’s entitlement to TDIU in the March 2009 rating decision. Furthermore, the Board finds that had the error not been made, the outcome would have been manifestly different, as the evidence of record at that time did not establish actual employability by clear and convincing evidence. Accordingly, the March 2009 rating decision contained CUE, and it is reversed.

 
M. SORISIO
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Bonnie Yoon, Counsel