# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-3215

RICHARD B. HIME, APPELLANT,

v.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided March 3, 2016)

*Sandra W. Wischow*, of Richmond, Virginia, was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Kenneth A. Walsh*, Deputy Assistant General Counsel; and *George M. Morris*, all of Washington, D.C., were on the brief for the appellee.

Before LANCE, PIETSCH, and BARTLEY, *Judges*.

LANCE, *Judge*, filed the opinion of the Court. BARTLEY, *Judge*, filed a dissenting opinion.

LANCE, *Judge*: The appellant, veteran Richard B. Hime, appeals through counsel an August 18, 2014, decision of the Board of Veterans' Appeals (Board), which determined that a November 14, 1983, Board decision denying entitlement to service connection for ischial bursitis of the left hip did not contain clear and unmistakable error (CUE). Record (R.) at 3-12. On July 17, 2015, this case was submitted to a panel for decision pursuant to Section I(b)(4) of the Court's Internal Operating Procedures. For the reasons that follow, the Court will affirm the Board's August 18, 2014, decision.

## I. FACTS

The appellant served in the U.S. Navy from December 27, 1966, to September 1, 1970. R. at 184. In November 1968, he dislocated his right shoulder; he was treated for limitation of motion

secondary to that dislocation in April 1969.  R. at 971.  The appellant filed a claim for entitlement to service connection for a right shoulder injury in 1979, which the Roanoke, Virginia, VA regional office (RO) granted in a November 1979 decision, assigning a noncompensable rating.  R. at 936.

In April 1982, the appellant filed a claim for an increased disability rating for his right shoulder injury, as well as a claim for entitlement to service connection for left hip bursitis secondary to his shoulder injury.  R. at 929-30.  He stated that his left hip bursitis developed as a result of "switch[ing] from being right handed to being left handed for certain activities" on the advice of a VA physician.  R. at 929.  The appellant underwent a VA compensation and pension (C&P) examination in June 1982; he again stated that his left hip bursitis was caused by favoring his left arm over his right.  R. at 907, 907-14.  The examiner's report did not address the appellant's left hip.  R. at 907-14.

In August 1982, the RO issued a decision denying both entitlement to an increased rating for the appellant's right shoulder injury and entitlement to service connection for left hip ischial bursitis.  R. at 905-06.  The appellant filed a Notice of Disagreement (NOD) in December 1982, along with a letter from Dr. J.D. Keith Palmer, a VA physician, dated October 1982.  R. at 900-902.  Dr. Palmer stated that, "[u]nfortunately and unforeseeably, the change to left-handed use caused the coxal bursitis to occur on the left side" and that his left hip "condition is directly related to his service connected condition of shoulder [osteoarthritis]."  R. at 902.  The RO issued a Statement of the Case (SOC) again denying his claims in May 1983, R. at 883-86, and the appellant perfected his appeal to the Board that same month, R. at 877-80.

In November 1983, a three-member panel of the Board, consisting of two attorneys and one medical doctor, issued a decision denying the appellant's claims.  R. at 864-68.  The Board acknowledged the October 1982 letter from Dr. Palmer, but it found that

> [t]here is no evidence that the [appellant] had left hip bursitis until a number of years after service discharge.  The [appellant] contends that his hip problem was caused by his service-connected right shoulder.  However, he had almost full range of motion in his shoulder, which should not have caused him significant functional problems.  We have taken into account the October 1982 [VA] physician's medical statement referred to by the [appellant], but we find that the evidence as a whole does not warrant service connection for left hip bursitis.

R. at 867.

2

In October 2010, the appellant filed a motion to revise the November 1983 Board decision on the basis of CUE. R. at 111-13. In his motion, he asserted that "[t]here was an unequivocal opinion from a VA physician that the hip bursitis was caused by [his shoulder condition]. There was no medical evidence to the contrary." R. at 112. He argued that the Board in 1983 therefore improperly applied 38 C.F.R. § 3.310(a) by denying entitlement to service connection for his left hip bursitis on a secondary basis. *Id.*

The Board issued a decision in January 2013 in which it found no CUE in the November 1983 decision. R. at 87-100. The Board explained that "[i]t [was] evident that the Board medical member disagreed with the October 1982 opinion" and that "the Board's doctor implicitly provided the countervailing evidence to deny the appeal." R. at 97. The Board explained that "[s]uch a procedure conformed to the practice of the Board in 1983 and was not forbidden by statute, regulation, instructions of the VA Administrator, or the precedent opinions of the chief VA law officer." *Id.*

The appellant appealed the Board's January 2013 decision to the Court, and the parties filed a joint motion for remand (JMR). R. at 35-40. In the JMR, the parties asserted that the Board did not "adequately explain how the rendering of an implicit countervailing medical finding is encompassed" in the duties of a medical member of the Board or whether any "implicit opinion" was contrary to the regulations setting forth the criteria for obtaining an independent medical expert's opinion. R. at 38-39. The Court granted the JMR in May 2013. R. at 34.

On remand, the appellant argued that the Board's November 1983 decision did not constitute a medical opinion and that the evidence of record in 1983 was therefore "uncontradicted, and substantiated all elements of [his] claim." R. at 19-21. He also argued that, even if the November 1983 decision constituted medical evidence against his claim, that decision violated his due process and fair process rights, as he was not given a meaningful opportunity to respond to that evidence. R. at 21-22.

On August 18, 2014, the Board issued the decision now on appeal and again determined that the November 1983 decision did not contain CUE. R. at 5. The Board explained that,

> when the Board denied the claim in November 1983, the Board panel consisted of
> a Medical Doctor who reviewed the case and signed the decision along with two Law
> Members. Therefore, in addition to the 1982 medical opinion, the November 1983

Board decision included an unfavorable opinion in the form of the opinion of the Medical Doctor on the November 1983 Board panel.

R. at 8. This appeal followed.

## II. THE PARTIES' ARGUMENTS

The appellant argues that the Board's conclusion that there was no CUE in the November 1983 Board decision was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Appellant's Brief (Br.) at 8 (quoting 38 U.S.C. § 7261(a)(3)(A)). Specifically, he contends that the November 1983 Board did not correctly apply 38 C.F.R. § 3.310(a), as the "only evidence of record supported a finding of service connection." *Id.* He also asserts that the Board erred when it found that the November 1983 Board decision constituted medical evidence. *Id.* at 8-12. Finally, and in the alternative, he argues that if the November 1983 Board decision *does* constitute medical evidence, then the decision violated his due process and fair process rights of notice and an opportunity to be heard. *Id.* at 13-14.

The Secretary responds that the Board properly determined that the November 1983 decision did not contain CUE. Secretary's Br. at 6-16. In particular, he argues that a medical member of the Board could, in November 1983, "provide a probative medical opinion," *id.* at 8, and that "the Board's 'use of its own medical judgment provided by the medical member of the panel was common practice,'" *id.* at 9 (quoting *Bowyer v. Brown*, 7 Vet.App. 549, 552 (1995)). Thus, he asserts, the Board in the decision now on appeal "correctly viewed . . . the 1983 Medical Member of the Board's concurrence as a medical opinion counter to the opinion of Dr. Palmer." *Id.* at 11. Finally, he contends that the appellant was afforded due process, as the appellant "was on notice that there was a medical doctor on the Board who could render opinions contradictory to any non-[Board] medical opinions," and he "could file a Motion for Reconsideration of the Board's decision." *Id.* at 14.

## III. ANALYSIS

### A. Background

At the time of its November 1983 decision, as now, the Board was tasked with assessing the competency, credibility, and probative value of the evidence of record to render a decision on "[a]ll questions on claims involving benefits under the laws administered by [VA]." *Compare* 38 U.S.C.

§§ 4004(a), 4005(d)(5), *with* 38 U.S.C. § 7104(a), (d) (2012); *see also Madden v. Gober*, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (it is the "duty [of] the Board to analyze the credibility and probative value of evidence"); *Owens v. Brown*, 7 Vet.App. 429, 433 (1995) (it is the province of the Board to weigh and assess the evidence of record). The Board of 1983, however, differed from the Board of today in several key ways.

First, although the Board today must provide "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1), the Board in 1983 was required only to provide "findings of fact and conclusions of law separately stated," 38 U.S.C. § 4004(d) (1982). In other words, the Board was not, at the time of its November 1983 decision, required to provide a comprehensive statement of the reasons or bases for that decision and, specifically, was not bound by the current requirement that it "account for the evidence which it finds to be persuasive or unpersuasive . . . and provide the reasons for its rejection of any [material] evidence." *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

Second, although the Board is now authorized to assign appeals to individual members for a decision, *see* 38 U.S.C. § 7102(a), Board decisions in 1983 were assigned to three-member panels called "sections," *see* 38 U.S.C. § 4002 (1982). Each section was "composed of three Members (a Chief Member and ordinarily a Law Member and a Medical Member)." Board of Veterans' Appeals Manual Number 1, ch. 2, § I, para. 2.03 (1972). The medical member, like the other members of the section, "ma[de] determinations and enter[ed] decisions on all questions and motions on appeals involving claims for benefits under all laws administered by [VA]." *Id.* para. 2.04(c)(1). In addition, the medical member "[r]ender[ed] advisory opinions to other Members or professional staff on medical problems within his specialized area of knowledge." *Id.* para. 2.04(c)(2).

As a result, the Board's "use of its own medical judgment provided by the medical member of the panel was common practice." *Bowyer*, 7 Vet.App. at 552. The medical members served "as adjudicators, deciding cases on their own medical expertise." ANNUAL REPORT OF THE CHAIRMAN, BOARD OF VETERANS' APPEALS, FOR FISCAL YEAR 1992, at 14 (1992). "[T]he Board functioned as a panel of experts applying its own legal and medical expertise," and the medical member's "medical judgment often controlled the outcome of an appeal." Remarks of the Hon. Charles L. Cragin, Chairman, Board of Veterans' Appeals, at the Fourth Annual Judicial Conference of the United

5

States Court of Veterans Appeals (Sept. 16, 1996), *in* 10 Vet.App. XIX, at CCLXV (1996). The Court, in *Colvin v. Derwinski*, ended this practice, holding that Board "panels must consider only independent medical evidence to support their findings rather than provide their own medical judgment in the guise of a Board opinion." 1 Vet.App. 171, 172 (1991), *overruled on other grounds by Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998).

### B. CUE in the November 1983 Board Decision

It is against this background that the Court must determine whether the Board erred when it determined that the November 1983 decision did not contain CUE. A CUE motion is a collateral attack on a final RO or Board decision. *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000). CUE is established when the following conditions are met: First, either (1) the correct facts in the record were not before the adjudicator, or (2) the statutory or regulatory provision in existence at the time were incorrectly applied. *Damrel v. Brown*, 6 Vet.App. 242, 245 (1994). Second, the alleged error was "undebatable," not merely "a disagreement as to how the facts were weighed or evaluated." *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc); *see also Hillyard v. Shinseki*, 24 Vet.App. 343, 349 (2011). Finally, the commission of the alleged error must have "manifestly changed the outcome" of the decision being attacked on the basis of CUE at the time that decision was rendered. *Russell*, 3 Vet.App. at 313-14; *see Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting the "manifestly changed the outcome" language from *Russell*); *see also King v. Shinseki*, 26 Vet.App. 433, 442 (2014) ("Whether it is reasonable to conclude that the outcome would have been different is not the standard that must be met for a motion alleging [CUE] to succeed. The governing law requires that the error be 'undebatable' and that the commission of the alleged error must have 'manifestly changed the outcome' of the decision." (citing *Russell*, 3 Vet.App. at 313-14)).

"CUE is a very specific and rare kind of 'error' . . . of fact or law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error." *Fugo v. Brown*, 6 Vet.App. 40, 43 (1993). "[I]f it is not absolutely clear that a different result would have ensued," based on the facts and law that were understood at the time of the decision, then any error that may have occurred in a final Board or RO decision is not clear and unmistakable. *Id.* at 44. "The Court cannot review a CUE motion under the same standard by which it reviews matters on direct appeal." *Evans v.*

6

*McDonald*, 27 Vet.App. 180, 186 (2014). "As a result, there will be times when the Court arrives at a different conclusion when reviewing a motion to reverse or revise a prior, final decision than it would have had the matter been reviewed under the standards applicable on direct appeal." *King*, 26 Vet.App. at 442. The Court's review of the Board's determination on the existence of CUE is limited to whether that conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or unsupported by adequate reasons or bases. 38 U.S.C. § 7261(a)(3); *Hillyard*, 24 Vet.App. at 349; *Russell*, 3 Vet.App. at 315.

The Court will turn first to the appellant's argument that the Board erred when it found that the November 1983 decision constituted medical evidence. *See* Appellant's Br. at 8-12. In the decision now on appeal, the Board determined that "the November 1983 Board decision included an unfavorable opinion in the form of the opinion of the Medical Doctor on the November 1983 Board panel." R. at 8. The Board explained that "[t]he November 1983 Board panel was free to use its own medical judgment in deciding the claim, and whether the articulation of its reasons or bases for applying that judgment may not meet present standards, it is not a basis for a CUE finding in the November 1983 Board decision." R. at 9. Although the Secretary now argues that the Board correctly found that the November 1983 Board decision "constituted a medical opinion" that weighed against the appellant's claim, Secretary's Br. at 10, the Court does not agree.

The Court has held in other contexts that VA decisions are not evidence. *See Wages v. McDonald*, 27 Vet.App. 233, 239 (holding that the Director of Compensation's determination as to whether an extraschedular rating was warranted "is not evidence"). "Evidence" is "[s]omething (including testimony, documents[,] and tangible objects) that tends to prove or disprove the existence of an alleged fact." BLACK'S LAW DICTIONARY 635 (9th ed. 2009). A Board decision, in contrast, *considers* "all evidence and material of record" to render a final determination "on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(a), (d)(1); *see* BLACK'S LAW DICTIONARY at 467 (defining "decision" as "[a] judicial or agency determination after consideration of the facts and the law"). Thus, although a Board decision represents the Board's

7

determination as to the correct facts of a case and the application of law to those facts, a Board decision is not, itself, evidence.[1]

Having determined that the Board erred when it found that the November 1983 decision constituted medical evidence against the appellant's claim, the Court must determine whether the appellant was prejudiced by that error. 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). The Court holds that the Board's error was not prejudicial.

Just as the Board today must determine whether the evidence of record is credible or probative, *see Madden*, 125 F.3d at 1481; *Owens*, 7 Vet.App. at 433, the Board in 1983 was required to examine and weigh the evidence of record when rendering its decision. As the Board determined, and the appellant concedes, "[t]he November 1983 Board panel was not prohibited from relying upon its own medical judgment to support its conclusion." R. at 9; *see* Appellant's Br. at 10. In other words, at the time of the November 1983 decision, the medical member of a Board section had the expertise to consider whether the medical evidence of record was competent, credible, and probative, and the Board was under no obligation to provide an explanation for its rejection of favorable evidence. *Cf. Caluza*, 7 Vet.App. at 506.

The parties do not dispute that the correct facts were before the Board at the time of the November 1983 decision. Rather, the appellant argues that, because "all of the evidence of record supported his position, there is only one permissible view of the evidence, and thus no weighing or reweighing of the evidence." Appellant's Br. at 6 (citing *Joyce v. Nicholson*, 19 Vet.App. 36, 43 (2005). Accordingly, he argues that "[t]he Board thus denied service connection . . . under 38 C.F.R. § 3.310(a), incorrectly applying the law to the facts of the case." *Id.*; *see Crippen v. Brown*, 9 Vet.App. 412, 422 (1996) (recognizing that CUE may be based on a showing "that there was *no* evidence before the [adjudicator] that could have supported a denial of the claim on the merits; that is, [that] *all* of the evidence militated in support of the claim"). The appellant's argument, however,

---

[1] This is not to say that a Board decision cannot be used to demonstrate that evidence exists to support a particular fact or occurrence. For example, a Board decision in one claimant's case might discuss evidence as to the activities of a particular unit or ship that another claimant could then use in a later appeal. *See* 38 C.F.R. § 20.1303 (2015) ("Prior decision in other appeals may be considered in a case to the extent that they reasonably relate to the case, but each case presented to the Board will be decided on the basis of the individual facts of the case in light of applicable procedure and substantive law.")

improperly assumes that the Board did not weigh the evidence or make determinations as to its probative value.

As discussed above, the presence of the medical member on the Board, pre-*Colvin*, allowed the Board to assess the probative value of medical opinions in a way that it now cannot, through the exercise of its own medical expertise and judgment. Coupled with the lack of a reasons-or-bases requirement at the time of the November 1983 decision, it is, at a minimum, not undebatable that the Board found the October 1982 opinion to be deficient in some way,[2] and the appellant's arguments amount to a disagreement as to how the Board weighed the evidence of record—something that cannot constitute CUE. *See Damrel*, 6 Vet.App. at 245; *Russell*, 3 Vet.App. at 313-14.

To be clear, the Court does not hold that it would reach the same result were it reviewing this case on direct appeal. *See King*, 26 Vet.App. at 442. The Court cannot conclude, however, that the November 1983 Board decision misapplied § 3.310(a). *See Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004) (holding that the "Court is obliged to review questions of law *de novo*" in CUE challenges). Therefore, we hold that the Board's conclusion that the November 1983 decision did not contain CUE is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or unsupported by adequate reasons or bases, 38 U.S.C. § 7261(a)(3); *Hillyard*, 24 Vet.App. at 349; *Russell*, 3 Vet.App. at 315.

C. Due Process and Fair Process

In light of the above analysis, the appellant's argument that the November 1983 Board decision violated his due process or fair process rights must also fail, as those arguments are premised on the assumption that the November 1983 Board decision could be considered a medical opinion, which—as explained above—it cannot. Moreover, although the appellant correctly asserts that "there was no avenue of appeal from a Board decision in 1983," Appellant's Br. at 14, claimants at that time did possess two post-adjudication opportunities to be heard, either by filing a motion for Board reconsideration or by filing a request to revise the decision on the basis of CUE—which the appellant did here. *See* 38 C.F.R. § 19.148 (1982) (providing for reconsideration "[u]pon allegation

---

[2] To be clear, the Court does not conclude that the Board found the October 1982 opinion to be deficient. Rather, the Court cannot, on the facts of this case, rule out the *possibility* that the Board did so, and it is precisely this room for debate over the Board's actions in November 1983 that proves fatal to the appellant's CUE challenge.

9

of error of fact or law by a claimant or his representative or on the Board's own motion") (now codified as revised at 38 C.F.R. § 20.1000); 38 C.F.R. § 3.105 (1982). This Court has previously held that there is no due process violation where "the statutes and regulations provide adequate remedy for any error that occurred in prior proceedings," including the opportunity to challenge a prior decision on the basis of CUE. *King*, 26 Vet.App. at 438. "Whatever due process requires, it requires no more than that." *Prinkey v. Shinseki*, 735 F.3d 1375, 1384 (Fed. Cir. 2013). The Court will, therefore, affirm the Board's August 18, 2014, decision.

## IV. CONCLUSION

For the foregoing reasons, the Board's August 18, 2014, decision is AFFIRMED.


BARTLEY, *Judge,* dissenting: The Board decision on appeal, although erroneously denying Mr. Hime's clear and unmistakable error (CUE) motion, nevertheless made a correct factual finding: It determined that the Board in 1983 denied secondary service connection based on a medical opinion that was included in the text of the Board decision. *See* R. at 8. ("[T]he November 1983 Board decision included an unfavorable opinion in the form of the opinion of the Medical Doctor on the November 1983 Board panel."). As explained below, identifying that medical opinion as extra-record evidence embedded in the text of the 1983 Board decision leads to an inescapable conclusion–that the Board in 1983 committed CUE and violated the veteran's constitutional due process rights when it denied service connection on the basis of extra-record evidence. Therefore, I dissent from the majority's decision to affirm the August 2014 Board decision finding no such errors.

The evidence of record in 1983 at the time the Board was considering Mr. Hime's appeal contained two documents pertinent to this discussion: (1) A July 1982 VA examination report that indicated the veteran had full range of motion of his service-connected right shoulder (this examiner did not provide an assessment of the veteran's left hip or otherwise comment on the etiology of left hip bursitis), R. at 907-11, and; (2) An October 1982 opinion from the Chief of Rehabilitation Medicine at the Hampton VA medical center, Dr. J.D. Keith Palmer, R. at 902. Dr. Palmer explained that Mr. Hime's right shoulder problems had required him to begin performing "activities

10

and motions" with his left hand[3] and that that switch to left-handed activity, necessitated by his service-connected right shoulder problems, had resulted in left hip bursitis. *Id.*. Dr. Palmer therefore opined that the veteran's left hip bursitis was secondarily related to his service-connected right shoulder. That opinion was the only opinion evidence of record on this matter that predated the Board decision. Based on this evidence, the Board in 1983 denied service connection for left hip bursitis secondary to a service-connected right shoulder because it concluded that the almost full range of motion in the veteran's right shoulder, which was recorded in July 1982, "should not have caused him significant [left hip] functional problems." R. at 867.

Given that the record evidence in 1983 included an October 1983 opinion from the Chief of Rehabilitation Medicine at a VA facility, asserting that therapy for the veteran's service-connected right shoulder led to left hip bursitis, and no contrary opinion, it is manifestly clear that, as the Board in the decision on appeal found, a negative medical opinion was included in the text of the 1983 Board decision–and that the Board relied on that opinion to deny secondary service connection for Mr. Hime's left hip bursitis. R. at 8-10.

Although I agree with the majority that in 1983 Board medical members were permitted to rely on medical "expertise to consider whether the medical evidence of record was competent, credible, and probative," *ante* at 8, that is not what happened here. As the Board in the decision on appeal found, a countervailing opinion was ultimately included in the 1983 Board decision, that the veteran's right shoulder should not have caused significant left hip functional problems. R. at 8 ("[T]he November 1983 Board decision included an unfavorable opinion in the form of the opinion of the Medical Doctor on the November 1983 Board panel."), 9 ("It is evident that the Board Medical Member disagreed with the October 1982 opinion authored by the VA physician that the [v]eteran's ischial bursitis of the left hip was secondary to his service-connected residuals of a right shoulder injury.").

The majority does not determine that this Board factual finding is clearly erroneous. Instead, my colleagues focus on the Secretary's characterization of the 1983 Board decision as evidence, simply ignoring the Board's characterization in the decision on appeal of the 1983 decision as *containing* evidence that was not part of the record before the Board. R. at 8. The majority's

---

[3]Mr. Hime was right-handed.

11

reliance on *Wages v. McDonald*, 27 Vet.App. 233, 239 (2015), to reject the Secretary's argument is therefore misplaced. *See ante* at 7-8. *Wages* holds only that a VA decision is not evidence; it does not prohibit the Board from finding, as the Board did here, that an earlier Board decision *includes* an extra-record medical opinion. *See* 27 Vet.App. at 239. Thus, the majority's discussion of *Wages* is a red herring that serves only to obfuscate the August 2014 Board finding under judicial review. As the Board decision on appeal correctly found, even if the 1983 Board decision itself is not considered evidence, it nevertheless contains an extra-record medical opinion evidentiary in nature. R. at 8. Therefore, unlike my colleagues, I believe it necessary to address whether the November 1983 Board's reliance on that extra-record medical opinion, which the Board decision on appeal freely admits was included in the 1983 decision, constituted CUE or violated Mr. Hime's constitutional due process rights, as argued by the veteran.

## I. CUE

Mr. Hime contends, inter alia, that the Board in November 1983 committed CUE because "the only evidence of record supported a finding of [secondary] service connection" for left hip bursitis, essentially asserting that the medical opinion that was included in the 1983 decision was not part of the record before the Board. Appellant's Brief (Br.) at 8. In November 1983, the relevant statute required that the Board "base its decision on the entire record." 38 U.S.C. § 4005(d)(5) (1982). At that time, however, the record in Mr. Hime's case did not contain a negative opinion as to whether left hip bursitis was secondary to the veteran's service-connected right shoulder; one was included in the Board decision when it was written. R. at 864-68; *see* R. at ("[T]he November 1983 Board decision included an unfavorable opinion in the form of the opinion of the Medical Doctor on the November 1983 Board panel."). As such, it cannot be said that the record before the Board at the time it was considering the veteran's entitlement contained any negative evidence as to linkage. Therefore, I would find that the Board's reliance on that extra-record evidence to deny the claim violated section 4005(d)(5).

That error was undebatable and led to a manifestly different outcome in the case: Aside from the extra-record negative opinion, which cannot be viewed as having been part of the record before the Board, the only evidence of record as to linkage was Dr. Palmer's positive opinion. Because the record did not contain any countervailing linkage evidence, the claim for service connection for left hip bursitis should have been resolved in the veteran's favor. *See* 38 C.F.R. § 3.102 (1983). But for

12

the 1983 Board's erroneous consideration of extra-record evidence, the medical opinion that the Board in 2014 found was included within the 1983 Board decision, R. at 8, Mr. Hime would have been granted secondary service connection for left hip bursitis. *See Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc). Given the foregoing, I would set aside the August 2014 Board decision finding no CUE in the November 1983 Board decision as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and remand the case for a retroactive grant of secondary service connection for left hip bursitis. *See Sondel v. West*, 13 Vet.App. 213, 222-23 (1999).

## II. Due Process

The Board in November 1983 denied Mr. Hime due process of law by including the negative opinion into its decision without first notifying the veteran of that evidence and providing him an opportunity to respond to it. Appellant's Br. at 13-14. The Due Process Clause of the Fifth Amendment prohibits the United States from depriving individuals of life, liberty, or property without due process of law. U.S. CONST. amend. V. Eligible applicants for VA disability benefits are protected by the Due Process Clause because they have a constitutionally protected property interest in their entitlement to those benefits.[4] *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009).

The amount of process that is constitutionally due depends on the situation, taking into account "the private interests that will be affected by the official action"; "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)); *see Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 572 U.S. 262, 265 (1998); *see Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Mathews*,

---

[4]Mr. Hime was thus protected because he properly filed a claim for secondary service connection in April 1982, R. at 929-30, and VA, in granting Mr. Hime service connection for a right shoulder disability in November 1979, found that he met the threshold eligibility requirements for disability compensation, R. at 936.

424 U.S. at 333. In general, those rights must be accorded prior to the deprivation of a property interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

In *Cushman*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) found that the Board's April 1980 reliance on an improperly altered document in the record violated the veteran's constitutional due process rights because his initial benefits determination was tainted by the presence of the altered document, that determination was subject to deferential review on a record that contained the document, and the document was not removed from the record in subsequent proceedings. 576 F.3d at 1299-1300. The Federal Circuit remanded for a de novo determination of the veteran's 1977 claim, implicitly declaring the April 1980 Board decision nonfinal. *Id*. at 1300. Hence, if a prejudicial due process violation occurred in this case, the 1983 Board decision may not stand in the way of a possible grant of service connection for left hip bursitis effective as early as the date of his original claim for those benefits in April 1982. R. at 929-30; *see Cushman*, 576 F.3d at 1300; *see also Gambill v. Shinseki*, 576 F.3d 1307, 1311 (Fed. Cir. 2009) (holding that the denial of due process "in a particular case is subject to harmless error analysis").

Turning to the merits of Mr. Hime's argument, I agree with him that the 1983 Board denial of service connection for left hip bursitis violated the tenets of constitutional due process to the extent that a negative opinion was included in the decision without first providing the veteran notice of the negative opinion and an opportunity to meaningfully respond to it. At best, Mr. Hime was provided postadjudication notice of the adverse opinion. However, the Due Process Clause required more.

An analysis of the process constitutionally due to the veteran begins with an assessment of the private interest at stake in a VA disability claim, *see Mathews*, 424 U.S. at 335–namely, an eligible veteran's entitlement to nondiscretionary, statutorily mandated disability benefits that a grateful nation has set aside for those willing to make the ultimate sacrifice to protect their fellow citizens, *see Cushman*, 576 F.3d at 1298; *see also Sneed v. Shinseki*, 737 F.3d 719, 728 (Fed. Cir. 2013) ("Although benefits cases may not threaten veterans' liberty or persons, veterans risked both life and liberty in their military service to this country. The veterans benefits scheme is thus 'imbued with special beneficence from a grateful sovereign.'" (quoting *Bailey v. West*, 160 F.3d 1360, 1370

14

(Fed. Cir. 1998) (Michel, J., concurring))). This is a "substantial" interest, one that weighs heavily in favor of requiring the type of procedural safeguards identified by Mr. Hime. *Gambill*, 576 F.3d at 1314.

The U.S. Supreme Court has stated that a veteran's private interest in entitlement to VA disability benefits is not as great as an individual's right to continued receipt of welfare subsistence benefits, which warrant the greatest level of constitutional protections. *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 333 (1985) (noting that "the benefits at stake in VA proceedings, which are not granted on the basis of need, are more akin to the Social Security benefits involved in *Mathews* than they are to the welfare payments upon which the recipients in *Goldberg* depended for their daily subsistence"). Even so, the administrative process found constitutionally adequate in *Mathews* provided greater procedural protections than the process provided Mr. Hime here. The claimant in *Mathews* was given pre-deprivation notice of the evidence upon which the proposed termination of his Social Security benefits was based, 424 U.S. at 338, whereas Mr. Hime was not notified of the adverse opinion to be included in the 1983 Board decision until he received the decision denying service connection for left hip bursitis, R. at 867. Given the favored status of veterans and their families, I am not convinced that the Constitution tolerates such a result. *Cf. Sneed*, 737 F.3d at 728 (explaining that "[t]he special treatment Congress reserved for veterans requires that courts lend veterans at least the same degree of solicitude as that bestowed on habeas petitioners," a class of individuals that the Constitution has traditionally afforded great protections); *Bailey*, 160 F.3d at 1368 (noting the Supreme Court's leniency in applying equitable tolling to convicted felons and stating that it was "loath to treat less worthily those who have served the country"). If Mr. Hime had been notified of a negative opinion contrary to Dr. Palmer's positive opinion, the veteran would have had the opportunity to develop additional evidence to counter it. As it happened, he believed that there was no opinion contrary to Dr. Palmer's medical opinion.

The second *Mathews* factor also favors Mr. Hime because the risk of erroneous deprivation of a claimant's entitlement to VA disability benefits was great at the time when a single entity–the Board–was authorized to develop and include, without notice to the claimant, negative medical evidence and render unappealable decisions on that evidence without preadjudication input from the claimant. Though Congress has long intended the veterans benefits system to be "as informal and nonadversarial as possible," *Walters*, 473 U.S. at 323-24, it recognized in 1988 that there was an

15

unacceptable level of risk inherent in allowing VA to operate in "splendid isolation . . . insulated from judicial review," H.R. Rep. 100-963 (internal quotations omitted). That degree of risk is amplified by the fact that, prior to 1988, the only avenue for refuting an adverse Board medical member opinion included in a Board decision denying benefits was to file a motion for Board reconsideration of that decision. But such motions then, as now, were to be granted only upon a finding of "obvious error of fact or law" or "[u]pon discovery of new and material evidence in the form of records or reports of the military, naval or air service department concerned or officially corrected service department record." 38 C.F.R. § 19.185 (1983).

Although the majority points to this process as an avenue that Mr. Hime could have used to challenge the 1983 Board decision, *see ante* at 9-10, the Board's policy in 1983 of allowing the inclusion of extra-record opinions into decisions would have prevented Mr. Hime from meeting the highly circumscribed and exacting standard for Board reconsideration based on an allegation that the Board erred in relying on such an extra-record opinion. Thus, the specter of such relief did not ameliorate the risk of erroneous deprivation inherent in allowing the Board to develop adverse opinions and include them in their decisions. *See Leary v. Daeschner*, 228 F.3d 729, 743 (6th Cir. 2000) ("[T]he sufficiency of predeprivation procedures must be considered in conjunction with the options for postdeprivation review; if elaborate procedures for postdeprivation review are in place, less elaborate predeprivation process may be required.").

The final *Mathews* factor–"the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," 424 U.S. at 335–also supports Mr. Hime. VA's paramount interest in veterans benefits cases, as articulated by the Federal Circuit in *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006), is "not that [the Government] shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them." In this respect, VA's interest in according justice to VA disability claimants is aligned with the claimants' interest in receiving the benefits to which they are legally entitled.

This interest cannot be achieved at any cost; VA has a concomitant interest in protecting the public fisc and ensuring that the veterans benefits system is not overburdened by unnecessary procedural requirements, so that meritorious claims may be efficiently processed and benefits timely paid. *See Mathews*, 424 U.S. at 348. However, it would be inconsistent to find the cost to the

16

Government of providing preadjudication notice of and an opportunity to respond to adverse Board-developed evidence high when, in fact, VA provided that very process to claimants for all other types of Board-developed evidence. The version of 38 C.F.R. § 19.179 in effect in 1983 provided that, when the Board obtained a medical opinion from an independent medical expert, VA's Chief Medical Director, or the Armed Forces Institute of Pathology, the Board was required to (1) furnish a copy of the opinion to the appellant or his or her representative, and (2) provide 60 days for the appellant to respond. 38 C.F.R. § 19.179 (1983) (citing 38 C.F.R. §§ 19.176-77 (1983)). It is unclear why VA did not extend this process to situations where the Board was inclined to include an opinion in the adjudicative decision itself; however, regardless of the reason for not doing so, the fact that VA afforded this additional process to all other types of Board-developed evidence suggests that the process was not unduly costly or burdensome for VA.

Given the substantial private interest claimants have in entitlement to VA disability benefits, the concordant Government interest in ensuring that veterans and their families receive those duly earned benefits, the high risk of an erroneous deprivation of that property interest inherent in the regime that allowed inclusion of medical opinions in Board decision without first disclosing such to claimants, and the apparently low financial and administrative cost of providing preadjudication notice of and an opportunity to respond to such opinions, I would find that the Due Process Clause of the Fifth Amendment required the Board in 1983, before deciding Mr. Hime's claim, to notify him of any adverse opinion and provide him an opportunity to respond. *See Mathews*, 424 U.S. at 335. I would therefore conclude that the Board denied Mr. Hime due process of law in 1983 when it failed to so notify him and provide him an opportunity to rebut the negative opinion.

Although the majority and Secretary attempt to avoid this conclusion by declaring that Mr. Hime received all the process he was constitutionally due because he was on notice that Board panels contained medical doctors and he had the opportunity to challenge a Board-generated opinion via a motion for Board Chairman reconsideration or a motion for revision based on CUE, *ante* at 9-10; Secretary's Br. at 14, that argument is utterly inconsistent with VA's express position in 1983 regarding the amount of process that was constitutionally due claimants for VA disability benefits. Notably, the version of the Board Manual in effect at that time declared that "it is an element of administrative due process that a claimant be afforded an opportunity to present evidence and/or argument on all data relevant to the claim." BOARD OF VETERANS' APPEALS MANUAL NUMBER 1

17

(MBVA-1), ch. 7, § III, para. 7.19(g) (July 1977) [hereinafter July 1977 MBVA-1]. The MBVA-1 clarified, in a section entitled "Due Process," that appellants have the "right to know about the factual evidence" before the Board. *Id*. at ch. 7, § I, para. 7.02(a). It explained that such notice, usually afforded via a Statement of the Case (SOC) or Supplemental SOC, was necessary to enable claimants "to proceed on an informed basis in developing and presenting appeals" by "permit[ting] them to identify any facts . . . with which they disagree, identify any error of law they believe was made, and present argument in more specific detail rather than simply asking that the conclusion reached be reviewed." *Id*. It is clear that Mr. Hime was deprived of the notice of the Board medical member's negative opinion and the opportunity to respond to it that VA considered due to him.

Given the foregoing, I must respectfully dissent from the majority's decision to affirm the August 2014 Board decision.