Citation Nr: 1826261 
Decision Date: 04/30/18 Archive Date: 05/07/18

DOCKET NO. 12-27 299A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of service connection for tinnitus.

2. Entitlement to service connection for tinnitus.

3. Entitlement to service connection for chronic fatigue syndrome (CFS), to include as secondary to posttraumatic stress disorder (PTSD).

4. Entitlement to service connection for multiple sclerosis.

5. Entitlement to service connection for a liver disorder, to include as due to an undiagnosed illness and as secondary to heat exposure.

6. Entitlement to service connection for a bladder disorder, to include as due to an undiagnosed illness and as secondary to heat exposure.

REPRESENTATION

Veteran represented by: John S. Berry, Attorney


ATTORNEY FOR THE BOARD

Jane R. Lee, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1983 to October 1998, and from February 2003 to April 2004.

This appeal is before the Board of Veterans' Appeals (Board) from rating decisions of a Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia. A January 2009 rating decision denied service connection for tinnitus and for a bilateral hip disorder due to the absence of new and material evidence, which was again denied in March 2010. A September 2011 rating decision denied service connection for tinnitus, a liver disorder, multiple sclerosis, and a bladder disorder; it also denied to reopen the claims for CFS and tinnitus due to the absence of new and material evidence. An October 2013 rating decision denied to reopen the claims for back and neck pain and entitlement to a temporary 100 percent evaluation because of hospitalization over 21 days and/or based on surgical or other treatment necessitating convalescence.

In May 2015, the Board remanded the issues for further evidentiary development. In October 2015, the Board reopened the bilateral hip and CFS claims and again remanded all the issues for further development. A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). While substantial compliance is required, strict compliance is not. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999)).

In this case, for the issues decided herein, the Agency of Original Jurisdiction (AOJ) substantially complied with the Board's October 2015 remand instructions by sending the Veteran a November 2015 letter notifying her as to the criteria for service connection on a secondary basis or based on service in the Persian Gulf, and requesting that she identify additional treatment received for these claimed disorders; obtaining updated VA treatment records; providing VA examinations for tinnitus, multiple sclerosis, and CFS; and readjudicating the claims in a January 2018 supplemental statement of the case (SSOC).

The Board notes that the claims file does not include any documentation reflecting that the AOJ contacted the appropriate service department to make efforts to obtain service treatment records (STRs) for service from February 2003 to April 2004. However, for the claims decided herein, such STRs are not necessary as they would not contain any relevant information on which the claims could be granted.

Subsequently, the RO issued a January 2018 rating decision granting service connection for a bilateral hip disorder and assigning a temporary 100 percent evaluation for the right hip. The Veteran submitted a February 2018 notice of disagreement, but these appeals are currently still pending before the RO and will not be addressed by the Board herein.

Additionally, a March 2018 rating decision granted service connection for a cervical strain, and for a lumbosacral strain and intervertebral disc syndrome. As these issues have been resolved by a full grant of benefits and the Veteran has not submitted any documents indicating that she is not satisfied with the decision, the Board finds that these issues are no longer part of the current appeal. See 38 C.F.R. § 19.26(d) (2017).

The issues of service connection for liver and bladder disorders are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. An unappealed January 2009 rating decision is the last final decision that denied service connection for tinnitus; and the evidence since received relates to an unestablished fact necessary to substantiate the claim for service connection for tinnitus and raises a reasonable possibility of substantiating the claim.

2. Resolving all reasonable doubt in her favor, the Veteran's symptoms of tinnitus had their onset during service.

3. The evidence does not show that the Veteran has a current diagnosis of CFS that was incurred in, or resulted from, active service.

4. The evidence does not show that the Veteran has a current diagnosis of multiple sclerosis that was incurred in, or resulted from, active service.


CONCLUSIONS OF LAW

1. The January 2009 rating decision denying service connection for tinnitus is final. 38 U.S.C. § 7105 (2012); 38 C.F.R. §§ 3.104, 3.160, 20.302, 20.1103 (2017).

2. The criteria to reopen the service connection claim for tinnitus are met. 38 U.S.C. §§ 5103, 5103A, 5107, 5108 (2012); 38 C.F.R. §§ 3.102, 3.156 (2017).

3. The criteria to establish service connection for tinnitus have been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).

4. The criteria to establish service connection for CFS are not met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.303, 3.310, 3.317 (2017).

5. The criteria to establish service connection for multiple sclerosis are not met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.303, 3.317 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Preliminary Matter

The Board has limited the discussion below to the relevant evidence required to support its finding of fact and conclusion of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016).

II. Petition to Reopen Previously Denied Service Connection Claim

The Veteran is seeking to reopen her previously denied claim of entitlement to service connection for tinnitus.

The term "service connection" applies to a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Entitlement to service connection requires that three elements be substantiated: (1) medical evidence of current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Rating decisions are final and binding based on evidence in the claims file at the time the claimant is notified of the decision and may not be revised on the same factual basis except by a duly constituted appellate authority. 38 C.F.R. § 3.104(a). The claimant has one year from notification of a RO decision to initiate an appeal by filing a notice of disagreement with the decision, and the decision becomes final if an appeal is not perfected within the allowed time period. 38 U.S.C. §7105; 38 C.F.R. §§ 3.160, 20.201, 20.302 (2017).

Here, the RO in a January 2009 rating decision denied service connection for tinnitus based on the lack of a current disability. The Veteran did not appeal this rating decision; nor was new and material evidence received prior to the expiration of the appeal period or prior to the appellate decision if a timely appeal had been filed. 38 C.F.R. § 3.156(b). Therefore, the decision became final one year after it was mailed to her. See 38 U.S.C. § 7105(c); 38 C.F.R. § 3.104(a).

Thereafter, the Veteran petitioned to have the previously denied tinnitus claim reopened. In a September 2011 rating decision, the RO denied to reopen the claim due to lack of new and material evidence. The Veteran subsequently appealed the rating decision.

It is the Board's jurisdictional responsibility to consider whether it is proper for a claim to be reopened. Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 2001). VA may reopen a claim that has been previously denied if new and material evidence is submitted by or on behalf of the claimant. 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a). Regarding applications for reopening, 38 C.F.R. § 3.156(a) defines "new" evidence as evidence not previously submitted to agency decision makers and "material" evidence as evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

When determining whether the claim should be reopened, the credibility of the newly submitted evidence is to be presumed. Fortuck v. Principi, 17 Vet. App. 173, 179 (2003); Justus v. Principi, 3 Vet. App. 510, 513 (1992). In order to reopen a claim, it is not necessary that new and material evidence be received regarding each previously unproven element of a claim. Indeed, newly submitted evidence need not be overwhelming as a "low threshold" standard is applied. See Shade v. Shinseki, 24 Vet. App. 110, 121 (2010).

When the RO adjudicated the January 2009 rating decision, the record included the Veteran's May 2008 claims application and STRs. The Veteran merely filed an application claiming service connection for tinnitus, and did not provide any statements regarding symptoms during service or any current symptoms.

The pertinent evidence obtained more than one year since the January 2009 rating decision consists of statements from the Veteran and her representative, VA treatment records, and a February 2016 VA examination report. The February 2016 VA examiner noted the Veteran's current report of recurrent tinnitus.

As such, without addressing the merits of this evidence, the Board finds that the new evidence addresses the issue of a current disability. See Justus, 3 Vet. App. at 512-13; see also Hodge v. West, 155 F.3d 1356, 1363 (Fed. Cir. 1998); Shade, 24 Vet. App. at 110. Therefore, the Board finds that this evidence is both "new," as it has not previously been considered by VA, and "material," as it relates to the unestablished element of a current disability, and raises a reasonable possibility of substantiating the claim. For these reasons, the petition to reopen is granted.

The Board notes that the Veteran's representative in a January 2012 correspondence contended that the January 2009 rating decision was clearly and unmistakably in error as the RO stated that the STRs were negative for any subjective and/or objective findings indicating tinnitus. However, there is an October 1984 STR reflecting periodic tinnitus. Regardless, the Veteran must demonstrate that, if the error had not been made, it would have manifestly changed the outcome at the time it was made. See Damrel v. Brown, 6 Vet. App. 242, 245 (1994); Russell v. Principi, 3 Vet. App. 310, 314 (1992). In this matter, the Veteran's claim failed on the basis of no current disability. As such, even if the RO's error of finding that there was no in-service incurrence of tinnitus had not been made, the Veteran's claim would still have been denied.

In Bernard v. Brown, 4 Vet. App. 384, 392 (1993), the United States Court of Appeals for Veterans Claims (Court) held that claims to reopen previously and finally denied claims implicated both the question of whether there is new and material evidence to reopen the claim and the question of whether, upon such reopening, the claimant is entitled to the requested benefits. Therefore, the "matter" over which the Board has jurisdiction under 38 U.S.C. § 7104(a) is the Veteran's claim of entitlement to VA benefits. The Board finds no prejudice to the Veteran in adjudicating the claim for entitlement to service connection for tinnitus on its merits below.

III. Service Connection Claims

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden, 381 F.3d at 1167; see also Caluza v. Brown, 7 Vet. App. 498 (1995).

The Court has held that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. . . . In the absence of proof of a present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Pertinent here, tinnitus is considered a "chronic disease" under 38 C.F.R. § 3.309(a); therefore 38 C.F.R. § 3.303(b) applies. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic disease" in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303(b).

Additionally, where a veteran served 90 days or more of active service, and a certain chronic disease, such as an organic disease of the nervous system (i.e., tinnitus), becomes manifest to a degree of 10 percent or more within one year after the date of separation from service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137 (2012); 38 C.F.R. §§ 3.307(a)(3), 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.

Service connection may also be established on a presumptive basis for a Persian Gulf veteran who exhibits objective indications of a qualifying chronic disability, including resulting from undiagnosed illness, that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 21, 2021, and which by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(1).

A qualifying chronic disability means a chronic disability resulting from any of the following (or any combination of the following): (A) an undiagnosed illness or (B) a medically unexplained chronic multisymptom illness that is defined by a cluster of signs or symptoms, such as chronic fatigue syndrome, fibromyalgia, and functional gastrointestinal disorders (excluding structural gastrointestinal diseases). 38 C.F.R. § 3.317(a)(2)(i).

The term medically unexplained chronic multisymptom illness means a diagnosed illness without conclusive pathophysiology or etiology; that is characterized by overlapping symptoms and signs; and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology are not considered medically unexplained. 38 C.F.R. § 3.317(a)(2)(ii).

"Objective indications of chronic disability" include both "signs," in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(3).

Signs or symptoms that may be manifestations of undiagnosed illness or medically unexplained chronic multisymptom illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss; and (13) menstrual disorders. 38 C.F.R. § 3.317(b).

In the case of claims based on undiagnosed illness under 38 U.S.C. § 1117 and 38 C.F.R. § 3.317, unlike those for "direct service connection," there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). Further, lay persons are competent to report objective signs of illness. Id.

Service connection may also be established on a secondary basis for a disability that is shown to be proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Id.; Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). Any increase in the severity of a nonservice-connected disability that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disability, will be itself service-connected. 38 C.F.R. § 3.310(b).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert, 1 Vet. App. at 49. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.
Tinnitus

As an initial matter, the Board finds that the Veteran has current complaints of tinnitus. Indeed, tinnitus is defined as "a noise in the ears, such as ringing, buzzing, roaring, or clicking. It is usually subjective in type." See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1956 (31st ed. 2007). Because tinnitus is "subjective," its existence is generally determined by whether the veteran claims to experience it. For VA purposes, tinnitus has been specifically found to be a disorder with symptoms that can be identified through lay observation alone. Charles v. Principi, 16 Vet. App. 370 (2002). Accordingly, a current disability is demonstrated.

The Veteran's STRs include an October 1984 routine audiometric evaluation report reflecting that the Veteran was routinely exposed to noise and had periodic tinnitus. Additionally, the Veteran's DD Form 214 reflects that her military occupation specialty (MOS) was an ammunition specialist. Therefore, the Board finds that the Veteran was exposed to acoustic trauma during service and also had in-service complaints of tinnitus.

With regard to etiology, the Board acknowledges the February 2016 VA examiner's unfavorable opinion that the Veteran's tinnitus was less likely than not caused by or related to military noise exposure based on the Veteran's failure to provide an exact nexus event or details regarding in-service onset of tinnitus, the Veteran's denials of tinnitus on her March 2003 and March 2004 post-deployment questionnaires, and the lack of significant permanent threshold shift in the Veteran's audiograms. However, this opinion does not address the October 1984 STR reflecting periodic tinnitus, merely dismisses the Veteran's report of onset in 1990 by requiring more specificity, and relies on the lack of significant permanent threshold shift in the Veteran's audiograms to find that there was no evidence of acoustic trauma despite the Veteran's MOS as an ammunition specialist. For these reasons, the Board finds the etiology opinion to carry less probative weight and is ultimately inadequate to decide the claim.

Nevertheless, the Board finds probative the Veteran's lay reports of current tinnitus, as well as the contemporaneous evidence of in-service periodic tinnitus. As tinnitus is considered a "chronic disease" and there is evidence that it was chronic in service, the Veteran's current tinnitus is presumed to have been incurred in service. Therefore, service connection for tinnitus is granted.

Chronic Fatigue Syndrome

The relevant evidence for this claim includes a VA treatment record from March 2010 noting that the Veteran would be evaluated for CFS and was assessed with CFS rule out pathology. A May 2010 neurology consultation report reflects that the neurologist assessed the Veteran with fibromyalgia, which could be the cause of her chronic fatigue.

In a June 2010 statement, the Veteran reported that she tired very easily.

A June 2011 VA PTSD examination report reflects the Veteran's complaint of fatigue due to sleep impairment.

A June 2011 VA examination report reflects the Veteran's complaint of daily fatigue, which began during service in the mid-1990s. She was assessed with fibromyalgia associated with fatigue. The examiner found that the Veteran did not meet the diagnostic criteria for CFS, and stated that her fatigue was likely secondary to fibromyalgia and depression.

In January 2012, while discussing her claim for CFS, the Veteran noted a history of tick bites during service, a May 1997 diagnosis of mycoplasma, and report of fatigue in April 1998 at separation.

VA treatment records reflect a history of fatigue syndrome. In May 2012, the Veteran complained of increasing fatigue, which the examiner attributed in part at least to her fibromyalgia. A treatment record from January 2015 reflects an assessment of CFS. However, it was not actually evaluated at that time and appears that it was just included as an assessment based on the Veteran's history of fatigue.

A February 2016 VA examination report reflects review of the Veteran's claims file and no diagnosis of CFS. The Veteran reported that she was diagnosed with CFS in 2007, and that she was seen by her VA primary care physician who referred her for a sleep study as she was tired "all the time." She stated that her fatigue came on slowly and had gotten worse, denied any other symptoms besides fatigue, and stated that her primary care physician informed her that her fatigue could be from her fibromyalgia. The VA examiner noted that the Veteran had diagnoses of fibromyalgia and PTSD, which both had fatigue as a symptom. As such, the examiner found that the Veteran did not meet the criteria for a CFS diagnosis. The examiner then opined that the Veteran's claimed CFS symptoms were less likely than not incurred in or caused by service, referring to a March 2010 working diagnosis of CFS, a final diagnosis in September 2010 of fibromyalgia, and a June 2011 VA examination report reflecting a diagnosis of fibromyalgia with fatigue. Additionally, the examiner opined that it was less likely than not that CFS was a disability pattern associated with specific exposure to Southwest Asia environmental hazards, but rather that the Veteran's symptom of chronic fatigue could be related to her diagnosed fibromyalgia. The examiner also noted that feeling fatigued was not the same as having CFS.

After review of the relevant evidence of record, lay and medical, the Board finds that the competent evidence weighs against the Veteran's claim of entitlement to service connection for CFS.

The evidence dated since the filing of her claim and during the pendency of her appeal does not show an actual diagnosis of CFS. Although VA treatment records refer to CFS, the treatment records themselves, as well as the June 2011 VA examination for fibromyalgia and February 2016 VA examination report for CFS, clarify the fact that the Veteran complained of fatigue but was found not to have CFS after evaluation. Rather her fatigue was found to be a symptom of both her fibromyalgia and PTSD. The Board notes that the Veteran is already service-connected for both fibromyalgia and PTSD. Because the threshold element of a current disability is not met in this case, it is unnecessary to address the remaining elements necessary to establish the service connection claim.

Additionally, as the Veteran's fatigue was found to be a symptom of both her fibromyalgia and PTSD, it is not a sign of an undiagnosed illness or a medically unexplained chronic multi-symptom illness. Therefore, service connection based on the undiagnosed illness provisions of 38 U.S.C. § 1117 and 38 C.F.R. § 3.317 is not available.

In summary, the Board finds that the preponderance of the evidence is against the Veteran's service connection claim for CFS. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. at 53-56.

Multiple Sclerosis

In a June 2010 statement, the Veteran reported pain all over her body, which she described as burning and stiffness in her joints. She stated that her hands were extremely shaky, got a "weird feeling" in her arms if she went out in the sun, walked with a limp, and was constantly fatigued. She reported a diagnosis of multiple sclerosis, for which she began receiving treatment in May 2010.

VA treatment records from May 2010 note that magnetic resonance imaging (MRI) of the brain indicated demyelinating disease vs. ischemic changes. As the Veteran was a Gulf War veteran, examination to exclude multiple sclerosis was required. Rheumatology declined to see the Veteran but suggested that pains in her thighs and extremities and chronic fatigue may be indicative of multiple sclerosis. She was assessed with chronic fatigue rule out multiple sclerosis, and referred to neurology. However, the neurologist found no clinical history suspicious for multiple sclerosis and rather assessed her with fibromyalgia, which could be the cause of her chronic fatigue.

A February 2016 VA examination report reflects review of the Veteran's claims file and no diagnosis of multiple sclerosis. The Veteran reported being diagnosed with multiple sclerosis in 2008 or 2009, after which time she had no further evaluation, work-up, treatment, or symptoms. However, the VA examiner stated that the Veteran was never diagnosed with multiple sclerosis, but rather was referred to neurology in May 2010 to rule out multiple sclerosis. The impression was fibromyalgia, at which time it was noted that the Veteran had no clinical history suspicious for multiple sclerosis and that MRI changes were most likely due to microangiopathic changes. The VA examiner opined that the Veteran's claimed multiple sclerosis was less likely than not incurred in or caused by service as she did not have a diagnosis of multiple sclerosis.

After review of the relevant evidence of record, lay and medical, the Board finds that the competent evidence weighs against the Veteran's claim of entitlement to service connection for multiple sclerosis.

The evidence dated since the filing of her claim and during the pendency of her appeal does not show an actual diagnosis of multiple sclerosis. Rather, because she is a Gulf War veteran, the Veteran was evaluated for multiple sclerosis, but was diagnosed with fibromyalgia instead. Additionally, the February 2016 VA examiner found that the Veteran did not have a diagnosis of multiple sclerosis. The Board notes that the Veteran is already service-connected for fibromyalgia. Because the threshold element of a current disability is not met in this case, it is unnecessary to address the remaining elements necessary to establish the service connection claim.

Additionally, as the Veteran's symptoms are attributable, at least in part, to fibromyalgia, service connection based on the undiagnosed illness provisions of 38 U.S.C. § 1117 and 38 C.F.R. § 3.317 is not available.

In summary, the Board finds that the preponderance of the evidence is against the Veteran's service connection claim for multiple sclerosis. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. at 53-56.


ORDER

New and material evidence having been received, the claim for entitlement to service connection for tinnitus is reopened.

Service connection for tinnitus is granted.

Service connection for CFS is denied.

Service connection for multiple sclerosis is denied.


REMAND

As to the remaining issues on appeal, remand is required in this case in order to provide the Veteran with a Persian Gulf examination and to obtain STRs for the period from February 2003 to April 2004.

A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall, 11 Vet. App. at 271. While substantial compliance is required, strict compliance is not. D'Aries, 22 Vet. App. at 105.

The October 2015 Board remand instructed the AOJ to 1) contact the appropriate service department to make efforts to obtain STRs for service from February 2003 to April 2004 and to notify the Veteran, if unsuccessful, to indicate what further steps VA will make; 2) send the Veteran notice letters regarding additional service connection criteria; 3) obtain updated VA treatment records; 4) ask the Veteran to identify additional relevant treatment records and make reasonable efforts to obtain them; 5) provide VA examinations; and 6) readjudicate the claims in an SSOC.

The RO complied with the Board's remand instructions except that there is no indication that it contacted the appropriate service department to make efforts to obtain STRs for service from February 2003 to April 2004. As such, remand is necessary to obtain such records as they could be relevant to the claims of service connection for liver and bladder disorders.

Additionally, the Veteran is a Persian Gulf veteran and filed claims for liver and bladder disorders. VA treatment records reflect elevated alkaline phosphatase levels (APL) in the liver. However, neither the VA treatment records nor the February 2016 VA examination report reflects a diagnosis involving the liver. Likewise, a VA treatment record from May 2010 reflects the Veteran's report of bladder "leakage" with coughing or sneezing, but no incontinence; and a January 2012 statement reflects reports of periodic incontinence. However, neither the treatment records nor the February 2016 VA examination report reflects a diagnosis involving the bladder. Although there is no current diagnosis involving the liver or the bladder, service connection may be established based on the fact that the Veteran is a Persian Gulf veteran. However, the Veteran has yet to be afforded a Gulf War examination to determine whether any of her claimed disorders are related to her Gulf War service.




Accordingly, the case is REMANDED for the following action:

1. Contact the appropriate service department to make efforts to obtain STRs for service from February 2003 to April 2004. All attempts and responses, including negative responses, should be documented in the claims file. If unsuccessful, the Veteran should be notified and afforded the opportunity to provide other evidence in place of these records.

2. Provide the Veteran with a Gulf War examination to determine the nature and etiology of any of her undiagnosed symptoms or disorders, including but not limited to her claimed liver and bladder disorders. All test and studies deemed necessary shall be performed. The examiner should be provided with the Veteran's claims file, including a copy of this remand.

After reviewing the claims file and examining the Veteran, the examiner is asked to address the following:

Determine whether any of the Veteran's claimed disorders currently at issue are signs or symptoms of an undiagnosed illness or a medically unexplained chronic multisystem illness that is defined by a cluster of signs or symptoms. *In doing so, consider the Veteran's elevated APL levels and reports of urinary leakage and incontinence.**

All opinions are to be accompanied by a rationale consistent with the evidence of record.

3. After conducting all other development deemed necessary, readjudicate the Veteran's claims for service connection for liver and bladder disorders. If the benefits sought on appeal are not granted, the Veteran and her attorney should be provided an SSOC and an appropriate time period for response. The case should then be returned to the Board for further consideration, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
Evan M. Deichert
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs